# EXHIBIT B

David Abrams, Attorney at Law
P.O. Box 3353 Church Street Station
New York, New York 10008
Tel. 212-897-5821 dnabrams@gmail.com

Supreme Court of the State of New York
County of New York

```
                                        )
State of New York ex rel.               )
TZAC, Inc.                              )
                                        )
                    Plaintiff-Relator,  )
                                        )
        - against -                     )        Index No.: 101260-19
                                        )
                                        )
New Israel Fund,                        )
                                        )
                    Defendant.          )
                                        )
```

Plaintiff-Relator, complaining of the Defendant by its attorney, David Abrams,

Attorney at Law, respectfully sets forth and alleges as follows:

**I.      Nature of the Case**

1.       This is a false claims act claim.  The Qui Tam Plaintiff and Relator, The Zionist

Advocacy Center ("TZAC" or "Plaintiff" or "Relator") alleges that the Defendant

fraudulently obtained and maintains its status of being substantially exempt from taxes by

repeatedly and fraudulently certifying that it refrains from electioneering activities.  As

set forth in more detail below, NIF regularly and systmatically supports unlawful

electioneering in violation of the strict requirements for tax exempt organizations.

**II.     Parties**

2.       Defendant New Israel Fund ("NIF") is a District of Columbia non-profit

corporation with its principle place of business in the State of New York, County of New

York.  Although the stated purpose of NIF is to help strengthen Israel's democracy, NIF

consistently opposes Israeli security by supporting organizations which seek to

undermine Israel.

3.      As part of its agenda NIF meddles in Israeli elections by financially supporting

organizations which constantly and systematically oppose some candidates running for

office while supporting others.  On its website NIF even discusses "our concerted

campaign to equip Israel's pro-democracy and progressive forces with the tools to fight

Israel's regressive right-and win." This shows that NIF know clearly that it is involving

itself in campaigning for officials and cannot claim that it didn't know about these

activities.

4.      NIF is registered under Section 501(c)(3) of the Internal Revenue Code and

therefore the income it receives from its donations and investments is tax exempt under

Federal, State, and local law.  Its headquarters are located at 6 East 39th Street New York,

NY 10016.  Its annual revenue is approximately $25 to $30 million, all of which would

be subject to state and local taxation if NIF were not tax exempt.

5.      Plaintiff-Relator the Zionist Advocacy Center ("Plaintiff") is a New York

corporation which advocates on behalf of the Jewish State.  Plaintiff's principle place of

business is in the State of New York, County of New York.

**III.      Compliance With Requirements of Suit**

6.      This matter will be filed under seal as required by law; shortly thereafter, a copy

of the Complaint, Sealing Order, and Relator's disclosure of evidence will be served on

the office of the New York Attorney General.

7.      Relator will not serve the Complaint or Amended Complaint or any other papers

in this matter until and unless it becomes unsealed.  Thus, if the Complaint or Amended

Complaint is served on the Defendant, it means that the matter has been duly unsealed.

**IV.      A Brief Statement of the Fraudulent Scheme**

7.      As set forth in more detail below, the Defendant falsely certified to the Internal

Revenue Service that it did not make any payments or incur any amounts to influence the

results of any election.  These certifications were false in that Defendant has

systematically and regularly supported organizations engaged in such electioneering.  As

a result of the false statements, Defendant enjoyed and continues to enjoy minimal

taxation status on the millions of dollars of annual revenue from its donations and

investments.

**V.      The Specific Fraudulent Statements of the Defendant**

8.      In its 2017 IRS Form 990 (Part IV Line 3), the Defendant certified that it had not

"engage[d] in direct or indirect political campaign activities on behalf of or in opposition

to candidates for public office."  This tracks the language of Internal Revenue Code

Section 501(c)(3) which forbids such organizations from engaging in activities to

"participate in, or intervene in (including the publishing or distributing of statements),

any political campaign on behalf of (or in opposition to) any candidate for public office."

9.      The 2017 Form 990 was executed by Jennifer Spitzer Gorovitz (VP Finance) on

or about November 8, 2018 and submitted to Federal and State authorities at or about the

same time.

10.      Similarly, in its 2016 IRS Form 990 the Defendant made substantially similar

certifications; the form was executed by Jennifer Spitzer Gorovitz on or about November

14, 2017 and submitted to Federal and State authorities at or about the same time.

11.      Similarly, in its 2015 IRS Form 990 the Defendant made substantially similar

certifications; the form was executed by Anthony Fullington (CFO) on or about October

03, 2016 and submitted to Federal and State authorities at or about the same time.

12.      Similarly, in its 2014 IRS Form 990 the Defendant made substantially similar

certifications; the form was executed by Anthony Fullington on or about October 06,

2015 and submitted to Federal and State authorities at or about the same time.

13.      Similarly, in its 2013 IRS Form 990 the Defendant made substantially similar

certifications; the form was executed by Anthony Fullington on or about October 07,

2014 and submitted to Federal and State authorities at or about the same time.

14.     Similarly, in its 2012 IRS Form 990 the Defendant made substantially similar certifications; the form was executed by Anthony Fullington on or about October 03, 2013 and submitted to Federal and State authorities at or about the same time.

15.     Similarly, in its 2011 IRS Form 990 the Defendant made substantially similar certifications; the form was executed by Anthony Fullington on or about October 18, 2012 and submitted to Federal and State authorities at or about the same time.

16.     Similarly, in its 2010 IRS Form 990 the Defendant made substantially similar certifications; the form was executed by Daniel Sokatch around November 28, 2011 and submitted to Federal and State authorities at or about the same time.

17.     Similarly, in its 2009 IRS Form 990 the Defendant made substantially similar certifications; the form was executed by Anthony Fullington on or about November 12, 2010 and submitted to Federal and State authorities at or about the same time.

18.     Similarly, in its 2008 IRS Form 990 the Defendant made substantially similar certifications; the form was executed by Nimalka Wijesooriya, on or about November 16, 2009 and submitted to Federal and State authorities at or about the same time.

19.     The form 990 was prepared by outside accountants; however, the finance and executive committee of the NIF reviewed it to ensure accuracy before it was filed with the IRS.

20.     As set forth in more detail below the Defendant engaged in electioneering activities contrary to its certifications.  If the Defendant had disclosed its activities to the IRS then it would not have been eligible for 501(c)(3) tax exemption.

21.     As a result of NIF's federal tax exemption, it receives exemption from taxation in the State and City of New York.

## VI.     The Specific Activities of the Defendant

22.     For at least the past 10 years and continuing through the present NIF has consistently electioneered in Israel by giving grants to organizations which oppose and support candidates for public office in Israel.

23.     NIF even got involved in electioneering activities directly. During the 2019 Israeli election many of its grantees worked to get the Otzma Yehudit Party banned from running for Knesset. An NIF grantee called Zazim: Community Action started a petition to disqualify Otzma Yehudit candidates and NIF gathered names to help Zazim in this effort. After the candidate -- Michael Ben-Ari -- was banned by the Supreme Court NIF called it a victory for democracy. This is clearly electioneering by opposing candidates for public office.

24.     Israel Religious Action Center ("IRAC") received grants from NIF in 2014, 2015, 2016, 2017 and 2018. IRAC is an entity involved in electioneering. In 2019 IRAC made a video about the danger of the Otzma Yehudit Party which included targeting of Itamar Ben Gvir, Michael Ben-Ari and Baruch Marzel.  IRAC then petitioned the Israel Central Election Committee to ban the Otzma Yehudit candidate, Michael Ben-Ari and then even sent lawyers to argue in favor of banning Ben-Ari and Itamar Ben Gvir. IRAC then sent a petition to the Supreme Court for the same reason with the full knowledge and acceptance by NIF. IRAC stated that this was its third time that it tried to get Ben-Ari barred from running for Knesset. From IRAC's own admission it had been electioneering for a while, against more than one candidate.

25.     While opposing one candidate is enough to be violating NIF's Internal Revenue Status, the fact that IRAC was constantly opposing more than one candidate with NIF's knowledge makes NIF's conduct all the more egregious. NIF posted on its website that the executive director of IRAC spoke in a Supreme Court hearing to argue in favor of

banning candidates from running for public office and quoted what was said. This posting

is an endorsement of what had been done by IRAC and was clearly not considered

problematic by NIF even though opposing candidates is clear electioneering.

25.      This is not the first time that IRAC electioneered; IRAC electioneered in the

previous election in Israel, in 2015. An IRAC attorney argued before the Israel Supreme

Court against the appeal of Baruch Marzel who had been disqualified from running for

Knesset by the Israel Central Election Committee. IRAC proudly posted that fact with a

picture on their Facebook account.

26.      Tag Meir Forum, another grantee of NIF, co-hosted a protest in 2019; this protest

was against the merger of the New Right Party and Otzma Yehudit Party because Tag

Meir was worried that these parties would be able to join the Knesset.

27.      These three organizations: Zazim: Community Action, IRAC and Tag Meir

Forum are all grantees of NIF and NIF proudly posted that these organizations were

opposing candidates, specifically Kahanist or Otzma Yehudit Candidates from running

for office.

28.      Another organization, Adalah, received general grants from NIF in 2012, 2013,

2014, 2015, 2016, 2017 and 2018; electioneering is a major part of its activities. On its

website it admits to petitioning the Central Election Commission to allow certain

candidates to run for public office without being disqualified. More specifically, in 2013

Adalah's general director Hassan Jabareen, and Adalah Attorney Sawsan Zaher

represented MK Haneen Zoabi in front of the Supreme Court to challenge the Central

Elections Commission decision to disqualify him. Adalah petitioned the Supreme Court

to overturn a decision by the Central Election Commission which banned an election

campaign video that was made by political party Balad/Tajammoa'. Again, in 2015

Adalah admitted to calling on the Central Election Commission to reject disqualification

motions against MK Haneen Zobabi.

29.     Adalah still continues to electioneer. In 2019 it petitioned the Supreme Court of

Israel to remove the authority of the Central Election Commission to vet Knesset

candidates. Not only that, Adalah also petitioned the Supreme Court to overturn the

disqualification of Dr. Ofer Cassif and of Balad-Ra'am. Furthermore, it stated its

opposition to Kahanist candidates by publicly calling them racist.

30.     NIF gave grants to Mossawa in 2007, 2008, 2009, 2010, 2011, 2012, 2013, 2014,

2015, 2016, 2017 and 2018. In 2018 Mossawa attacked a sign from Jewish Home

Campaign as racist, clearly insinuating that it does not approve of Jewish Home and its

candidates and that no one should vote for them. Mossawa also attacked the Likud

Campaign and said that Likud wants the Israeli's to decide between a fascist society and

a pluralistic society that respects human dignity and diversity. This is a clear attack on the

Likud campaign and is clearly opposing Likud candidates running for public office.

31.     Adam Teva received grants from NIF in 2014, 2016 and 2017. In 2018 Adam

Teva posted a list of candidates who undertook a pledge to follow a certain protocol to

preserve trees. This protocol was on the pledge which Adam Teva posted on their

website. Adam Teva said that the list of candidates will be kept on their website until the

next election date. This is clear electioneering because the list was put up specifically for

the election.

32.     NIF gave and continues to give general grants on a constant basis to organizations

that are involved in electioneering which it knows about.

33.     NIF knows that these grantees are electioneering because these grantees proudly

post on their websites what they have been doing and NIF says that it monitors actions of

its grantees to make sure they aren't violating any rules. As noted above, on its website

NIF even writes that "New Initiatives for Democracy (NIFD) is our concerted campaign

to equip Israel's pro-democracy and progressive forces with the tools to fight Israel's

regressive right-and win." This shows that NIF know clearly that it is involving itself in

7

campaigning for officials and cannot claim that it didn't know about these activities. NIF also alleges that grantees make a point of sharing newspapers and free media coverage with NIF. This shows that NIF know the activities of its grantees and does not stop giving grants to these organizations that are electioneering with its knowledge, on the contrary NIF promotes the electioneering activities.

## VII.    (Count I)  Violation of the False Claims Act

33.    The False Claims Act imposes liability on a person or entity who "knowingly makes, uses, or causes to  be  made  or  used,  a  false record  or  statement material to an obligation to pay or transmit money or property to the state or a local government"  New York State Finance Law Section 189(g).

34.    NIF states that they monitor their grantees activities carefully to ensure that the organizations are not doing anything problematic. Even though NIF knows that these organizations are electioneering, NIF has taken no actions to stop them, stop funding them and even goes so far as to promote these activities.

35.    Thus, the Defendant violated the False Claims Act by preparing fraudulent tax returns as signed by different representatives as set forth above and electioneering in campaigns in Israel.

## VIII.   Relief Sought

36.    On behalf of the government, Relator is seeking judgment for the triple damages and civil penalties set forth in New York State Finance Law Section 189(h).

37.    The fraudulent conduct described above resulted in avoided taxes on  at least approximately 250 million dollars in income.

38.    Assuming a combined state and local tax rate of approximately 15%, this resulted in approximately $37,500,000 in avoided taxes.  Multiplying this by 3 gives a total of approximately $110 million dollars.

8

39.    Accordingly, Relator seeks judgment in the amount of $110 million dollars

against Defendant and in favor of the State of New York, together with costs, interest,

civil penalties, an appropriate qui tam award, and such other and further relief as the

Court deems just.

Respectfully submitted,

_____

David Abrams, Attorney at Law
  Attorney for Relator
Zionist Advocacy Center

P.O. Box 3353
Church Street Station
New York, NY 10008
Tel. 212-897-5821
Fax  212-897-5811

Dated: New York, NY
        August 15, 2019