# KING & SPALDING

King & Spalding LLP
1185 Avenue of the Americas
New York, NY 10036-4003
Tel: +1 212 556 2100
Fax: +1 212 556 2222
www.kslaw.com

J. Emmett Murphy
Partner
Direct Dial: +1 212 556 2191
jemurphy@kslaw.com

June 12, 2020

*Via ECF*

The Honorable Gregory H. Woods
United States District Judge
Southern District of New York
Daniel Patrick Moynihan
   United States Courthouse
500 Pearl St.
New York, New York 10007-1312

      Re:   *State of New York ex rel. TZAC, Inc. v. New Israel Fund*,
             Case No. 1:20-cv-02955-GHW

Judge Woods,

    We are counsel to Defendant New Israel Fund (NIF) in the above-referenced action. Pursuant to Rule 2.C of Your Honor's Individual Rules of Practice in Civil Cases, we write to request a pre-motion conference concerning NIF's anticipated motion to dismiss this action.[1]

**I. Allegations in the Complaint**

    The complaint asserts a single claim to relief against NIF for violating the New York False Claims Act. *See* Defendant New Israel Fund's Notice of Removal Pursuant to 28 U.S.C. § 1331 (Federal Question Jurisdiction), Doc. 1, Ex. B ¶¶ 33[-2]–35 [hereinafter Compl.][2]; N.Y. Fin. Law § 187 *et seq.* A mirror of its federal counterpart, that statute allows New York to recover civil penalties and treble damages from a person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the state or a local government." N.Y. Fin. Law § 189(1)(g). TZAC, a private entity, seeks to sue on behalf of the State through the statute's *qui tam* provisions. *See id.* § 190(2). The State reviewed TZAC's allegations and declined to intervene in the case. *See* Order, *State of New York ex rel. TZAC, Inc. v. New Israel Fund*, Index No.: 101260-19 (N.Y. Sup. Ct. Dec. 13, 2019), Doc. 2 (referencing "the State of New York's November 22, 2019 Notice of Election to Decline Intervention"). The case then was unsealed and served on NIF, and NIF removed it to this Court.

    According to the complaint, NIF violated the New York False Claims Act by "fraudulently obtain[ing] and maintain[ing] its status of being substantially exempt from taxes by repeatedly and

---

[1] NIF has also filed a related request for a stay of discovery under separate cover.
[2] The complaint uses several paragraph numbers more than once. NIF has distinguished duplicate paragraph numbers with bracketed notations. (*e.g.*, ¶ 33[-1], ¶ 33[-2]).

fraudulently certifying that it refrains from electioneering activities." Compl. ¶ 1. More specifically, TZAC contends that NIF's distribution of charitable grants to various Israeli organizations violates the restrictions imposed by § 501(c)(3) of the federal Internal Revenue Code under which NIF enjoys certain tax benefits as a not-for-profit charity. *See id.* ¶ 4 ("NIF is registered under Section 501(c)(3) of the Internal Revenue Code and therefore the income it receives from its donations and investments is tax exempt under Federal, State, and local law."). TZAC contends that this alleged misrepresentation to the IRS of compliance with § 501(c)(3) has led to a violation of the New York False Claims Act because "[a]s a result of NIF's federal tax exemption, it receives exemption from taxation in the State and City of New York." *Id.* ¶ 21.

TZAC references NIF's federal "Form 990" tax filings from 2008 to 2017 and claims that those forms contained false certifications that NIF "had not 'engage[d] in direct or indirect political campaign activies on behalf of or in opposition to candidates for public office.'" *Id.* ¶¶ 8–19. TZAC maintains that those certifications were "false" because at various points in that ten-year period, NIF distributed grants to six Israeli nonprofits engaged in what TZAC labels "electioneering." *E.g., id.* ¶ 7[-2]. Intended as a reference to the Internal Revenue Code's prohibition on "direct or indirect political campaign activities on behalf of or in opposition to candidates for public office," *see id.* ¶ 8, TZAC applies the "electioneering" label to a host of efforts to promote and enforce Israel's Basic Law, which guarantees Arabs the equal right to run for office, *see* art. 6(a), and prohibits all candidates and parties from "[i]ncit[ing] racism," art. 7A. According to TZAC, NIF's financial support of organizations involved in this and other issue advocacy violated its § 501(c)(3) status and rendered its Form 990s "false records" used to avoid "an obligation to pay or transmit money or property to the state." N.Y. Fin. Law § 189(1)(g).

**II. Grounds for the Proposed Motion to Dismiss**

The allegations just discussed do not state a valid claim under the New York False Claims Act for multiple reasons.

**A. The Public Disclosure Bar Prohibits This Action:** The New York False Claims Act's "public disclosure bar" prohibits TZAC from bringing suit based on information in the public domain. Like the federal False Claims Act, the New York statute directs courts to "dismiss a qui tam action" if the allegations in the complaint are "substantially the same [as] allegations or transactions" that have been "publicly disclosed … in the news media" or "in a … government report." *Id.* § 190(9)(b). TZAC has based each and every one of its allegations on information contained in government reports or the news media. This includes reports available on the IRS website, NIF's own website, the Internet publications of various charity watchdog organizations, the Internet publications of the NIF grantees themselves, and other press outlets. TZAC has not attempted to claim exemption from the public disclosure bar as an "original source" of the allegations, as well it could not. The public disclosure bar requires dismissal of TZAC's complaint.

**B. Federal Law Preempts This Action:** Even if New York law permitted this action, federal tax law would preempt it. Congress has dictated that "the administration and enforcement of" the Internal Revenue Code "shall be performed by or under the supervision of the Secretary of the Treasury" "[e]xcept as otherwise expressly provided by law." 26 U.S.C. § 7801(a)(1). Congress has underscored that restriction by carefully circumscribing judicial review of the IRS's § 501(c)(3) determinations. *See* 26 U.S.C. § 7428(a) (limiting the venue and permissible parties to an action reviewing a charity's § 501(c)(3) status). And Congress has further insulated the IRS's determinations from collateral challenges like TZAC's by excluding federal tax filings from the

purview of the *federal* False Claims Act.  *See* 31 U.S.C. § 3729(d).  These provisions show a clear congressional intent to preclude and preempt attempts to enforce § 501(c)(3) by other means.  Congress's approach makes good sense, given that the availability of tax subsidies for charitable work is a sensitive, politically fraught topic that would—if Congress permitted it—spawn politically-motivated litigation.  TZAC's effort to use the New York False Claims Act to privately enforce § 501(c)(3) thus conflicts with federal law.  *See Buckman v. Plaintiffs' Legal Cmte.*, 531 U.S. 341 (2001) (holding state-law "fraud-on-the-FDA" claims preempted because they conflicted with Congress's grant to FDA of exclusive authority to enforce the Food, Drug, and Cosmetic Act).

**C.  The Activities Alleged in the Complaint do not Violate § 501(c)(3):**  Even if TZAC could use New York's False Claims Act to privately enforce § 501(c)(3), the complaint would fail to state a claim that NIF violated § 501(c)(3).  Even assuming the various grantee activities alleged in the complaint could be imputed to NIF, they are either insufficiently pleaded or show only permissible *issue* advocacy in support of human and civil rights secured under Israeli law.  *See* 26 C.F.R. § 1.501(c)(3)-1(d)(2).  That some of the grantee activities may incidentally impact specific candidates or parties does not transform those activities from permissible issue advocacy into prohibited partisan campaigning.  Repeating the "electioneering" label, but without pleading specific facts showing that conduct crossed the line from issue advocacy into partisan campaigning, fails to satisfy Rule 9(b).  *See U.S. ex rel. Chorches v. Am. Med. Response, Inc.*, 865 F.3d 71, 81 (2d Cir. 2017).  Moreover, TZAC's attempt to take federal tax enforcement into its own hands raises serious constitutional concerns.  NIF had no notice of TZAC's interpretation of § 501(c)(3) because the IRS has never interpreted or applied that statute in the way TZAC demands.   Yet TZAC seeks "quasi-criminal" and draconian relief—treble damages plus penalties—thus heightening the importance of fair notice.  *See Advance Pharms., Inc. v. United States*, 391 F.3d 377, 396 (2d Cir. 2004).  If there is any ambiguity in § 501(c)(3), the Court should construe it not to prohibit NIF's alleged activities; otherwise, protected speech and charitable work would be chilled.  *Big Mama Rag, Inc. v. United States*, 631 F.2d 1030, 1034 (D.C. Cir. 1980) (holding that IRS regulations regarding the 501(c)(3) status of educational organizations were unconstitutionally vague).

For any and all of these independently dispositive reasons, this action should be dismissed.  We understand from counsel for TZAC that TZAC intends to oppose NIF's motion to dismiss.

Respectfully Submitted,

*/s/ J. Emmett Murphy*
J. Emmett Murphy

*Counsel for Defendant New Israel Fund*

cc: Counsel of record (via ECF)