David Abrams, Attorney at Law
305 Broadway Suite 601
New York, New York 10007
Tel. 212-897-5821 dnabrams@gmail.com

United States District Court
Southern District of New York

---

| | |
|---|---|
| State of New York ex rel. TZAC, Inc. | |
| Plaintiff-Relator, | |
| - against - | No.: 1:20-cv-02955-GHW |
| | **Amended Complaint** |
| New Israel Fund, | |
| Defendant. | |

Plaintiff-Relator, complaining of the Defendant by its attorney, David Abrams, Attorney at Law, respectfully sets forth and alleges as follows:

**I.      Nature of the Case**

1.      This is a false claims act claim.  The Qui Tam Plaintiff and Relator, The Zionist Advocacy Center ("TZAC" or "Plaintiff" or "Relator") alleges that the Defendant fraudulently obtained and maintains its status of being substantially exempt from taxes by repeatedly and fraudulently certifying that it refrains from electioneering activities.  As set forth in more detail below, NIF regularly and systmatically supports unlawful electioneering in violation of the strict requirements for tax exempt organizations.

**II.     Parties**

2.      Defendant New Israel Fund ("NIF") is a District of Columbia non-profit corporation with its principle place of business in the State of New York, County of New York.  Although the stated purpose of NIF is to help strengthen Israel's democracy, NIF consistently opposes Israeli security by supporting organizations which seek to undermine Israel.

3. As part of its agenda NIF meddles in Israeli elections by financially supporting organizations which constantly and systematically oppose some candidates running for office while supporting others. On its website NIF even discusses "our concerted campaign to equip Israel's pro-democracy and progressive forces with the tools to fight Israel's regressive right-and win." This shows that NIF know clearly that it is involving itself in campaigning for officials and cannot claim that it didn't know about these activities.

4. NIF is registered under Section 501(c)(3) of the Internal Revenue Code and therefore the income it receives from its donations and investments is tax exempt under Federal, State, and local law. Its headquarters are located at 6 East 39th Street New York, NY 10016. Its annual revenue is approximately $25 to $30 million, all of which would be subject to state and local taxation if NIF were not tax exempt.

5. Plaintiff-Relator the Zionist Advocacy Center ("Plaintiff") is a New York corporation which advocates on behalf of the Jewish State. Plaintiff's principle place of business is in the State of New York, County of New York.

### III. Compliance With Requirements of Suit

6. This matter will be filed under seal as required by law; shortly thereafter, a copy of the Complaint, Sealing Order, and Relator's disclosure of evidence will be served on the office of the New York Attorney General.

7. Relator will not serve the Complaint or Amended Complaint or any other papers in this matter until and unless it becomes unsealed. Thus, if the Complaint or Amended Complaint is served on the Defendant, it means that the matter has been duly unsealed.

### IV. A Brief Statement of the Fraudulent Scheme

8. As set forth in more detail below, the Defendant falsely certified to the Internal Revenue Service that it did not make any payments or incur any amounts to influence the results of any election. These certifications were false in that Defendant has

2

systematically and regularly supported organizations engaged in such electioneering. As a result of the false statements, Defendant enjoyed and continues to enjoy minimal taxation status on the millions of dollars of annual revenue from its donations and investments.

**V.      The Specific Fraudulent Statements of the Defendant**

9.      In its 2017 IRS Form 990 (Part IV Line 3), the Defendant certified that it had not "engage[d] in direct or indirect political campaign activities on behalf of or in opposition to candidates for public office." This tracks the language of Internal Revenue Code Section 501(c)(3) which forbids such organizations from engaging in activities to "participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of (or in opposition to) any candidate for public office."

10.     The 2017 Form 990 was executed by Jennifer Spitzer Gorovitz (VP Finance) on or about November 8, 2018 and submitted to Federal and State authorities at or about the same time.

11.     Similarly, in its 2016 IRS Form 990 the Defendant made substantially similar certifications; the form was executed by Jennifer Spitzer Gorovitz on or about November 14, 2017 and submitted to Federal and State authorities at or about the same time.

12.     Similarly, in its 2015 IRS Form 990 the Defendant made substantially similar certifications; the form was executed by Anthony Fullington (CFO) on or about October 03, 2016 and submitted to Federal and State authorities at or about the same time.

13.     Similarly, in its 2014 IRS Form 990 the Defendant made substantially similar certifications; the form was executed by Anthony Fullington on or about October 06, 2015 and submitted to Federal and State authorities at or about the same time.

14.     Similarly, in its 2013 IRS Form 990 the Defendant made substantially similar certifications; the form was executed by Anthony Fullington on or about October 07, 2014 and submitted to Federal and State authorities at or about the same time.

15. Similarly, in its 2012 IRS Form 990 the Defendant made substantially similar certifications; the form was executed by Anthony Fullington on or about October 03, 2013 and submitted to Federal and State authorities at or about the same time.

16. Similarly, in its 2011 IRS Form 990 the Defendant made substantially similar certifications; the form was executed by Anthony Fullington on or about October 18, 2012 and submitted to Federal and State authorities at or about the same time.

17. Similarly, in its 2010 IRS Form 990 the Defendant made substantially similar certifications; the form was executed by Daniel Sokatch around November 28, 2011 and submitted to Federal and State authorities at or about the same time.

18. Similarly, in its 2009 IRS Form 990 the Defendant made substantially similar certifications; the form was executed by Anthony Fullington on or about November 12, 2010 and submitted to Federal and State authorities at or about the same time.

19. Similarly, in its 2008 IRS Form 990 the Defendant made substantially similar certifications; the form was executed by Nimalka Wijesooriya, on or about November 16, 2009 and submitted to Federal and State authorities at or about the same time.

20. The form 990 was prepared by outside accountants; however, the finance and executive committee of the NIF reviewed it to ensure accuracy before it was filed with the IRS.

21. As set forth in more detail below the Defendant engaged in electioneering activities contrary to its certifications. If the Defendant had disclosed its activities to the IRS then it would not have been eligible for 501(c)(3) tax exemption.

22. As a result of NIF's federal tax exemption, it receives exemption from taxation in the State and City of New York based on rule 20 N.Y.C.R.R. 1-3.4(b)(6)(i), (ii).

**VI.     The Specific Activities of the Defendant**

23.    For at least the past 10 years and continuing through the present NIF has consistently electioneered in Israel by giving grants to organizations which oppose and support candidates for public office in Israel.

24.    In 2019 NIF got involved in electioneering directly. During the 2019 Israeli election season NIF helped to gather names for a petition to disqualify Otzma Yehudit candidate from running for Knesset. NIF sent out the petition and asked for people to sign. After the candidate—Michael Ben-Ari – was banned by the Supreme Court NIF called it a victory for democracy. This is clearly electioneering by opposing candidates for public office.

25.    Israel Religious Action Center ("IRAC") received grants from NIF in 2014, 2015, 2016, 2017, 2018 and as also set forth in more detail below, electioneered in the 2015 and 2019 election in Israel. In 2019 IRAC published a video about the danger of the Otzma Yehudit Party. The video targeted Bentzi Gopstein, Itamar Ben Gvir, Michael Ben-Ari and Baruch Marzel.

26.    While opposing one candidate is enough to be violating NIF's Internal Revenue Status, the fact that IRAC was constantly opposing more than one candidate with NIF's knowledge makes NIF's conduct all the more egregious.

 27.    This is not the first time that IRAC electioneered; IRAC electioneered in the previous election in Israel, in 2015. An IRAC attorney argued before the Israel Supreme Court against the appeal of Baruch Marzel who had been disqualified from running for Knesset by the Israel Central Election Committee. IRAC proudly posted that fact with a picture on their Facebook account.

28. Another organization, Adalah, received general grants from NIF in 2012, 2013, 2014, 2015, 2016, 2017 and 2018. In 2015 Adalah admitted to calling on the Central Election Commission to reject disqualification motions against MK Haneen Zoabi.

29. NIF gave grants to Mossawa in 2007, 2008, 2009, 2010, 2011, 2012, 2013, 2014, 2015, 2016, 2017 and 2018. In 2018 Mossawa attacked a sign from Jewish Home Campaign as racist, clearly insinuating that it does not approve of Jewish Home and its candidates and that no one should vote for them. Mossawa also attacked the Likud Campaign and said that Likud wants the Israeli's to decide between a fascist society and a pluralistic society that respects human dignity and diversity. This is a clear attack on the Likud campaign and is clearly opposing Likud candidates running for public office.

30. Adam Teva received grants from NIF in 2014, 2016 and 2017. In 2018 Adam Teva posted a list of candidates who undertook a pledge to follow a certain protocol to preserve trees. This protocol was on the pledge which Adam Teva posted on their website. Adam Teva said that the list of candidates will be kept on their website until the next election date. This is clear electioneering because the list was put up specifically for the election.

31. NIF gave and continues to give general grants on a constant basis to organizations that are involved in electioneering which it knows about. NIF pays lip service to its own requirement listed on its web site that grantees shouldn't electioneer. Instead, NIF has knowingly or recklessly allowed grantees to electioneer.

32. NIF knows that these grantees are electioneering because these grantees proudly post on their websites what they have been doing and NIF says that it monitors actions of its grantees to make sure they aren't violating any rules. As noted above, on its website NIF even writes that "New Initiatives for Democracy (NIFD) is our concerted campaign to equip Israel's pro-democracy and progressive forces with the tools to fight Israel's regressive right-and win." This shows that NIF know clearly that it is involving itself in

campaigning for officials and cannot claim that it didn't know about these activities. NIF also alleges that grantees make a point of sharing newspapers and free media coverage with NIF. This shows that NIF know the activities of its grantees and does not stop giving grants to these organizations that are electioneering with its knowledge, on the contrary NIF promotes the electioneering activities.

33. Furthermore, NIF has a webpage dedicated to explaining its strategies for its NIFD. One section explains that NIF can move from military to political solutions by "reclaiming national security to include progressive ideals." NIF goes on to explain:

> Through our partnership with the Council for Peace and Security (CPS)…, we intend to redefine the security discourse. By amplifying CPS' resources and outreach, we can expand the current narrative, which exploits security issues for the purposes of defending the occupation. With our assistance increasing organizational resources, CPS will focus on articulating new and compelling ideas on the immediate and long-term security challenges facing the country and on redefining the security paradigm in ways consistent with progressive values…

34. CPS received grants from NIF beginning at least as early as 2014. One of CPS' "new and compelling idea on the… security challenges" was to tell Israelis before the 2015 elections to vote Benjamin Netanyahu out of office. CPS made a large campaign which explained, in the Hebrew language, that with Benjamin Netanyahu in office, the situation with the Palestinians will not change; however, the voters have a chance to make a change by voting in the election. They campaigned in the street in Israel, as well as on their YouTube and Facebook pages. This is very clearly electioneering by convincing voters to vote against Benjamin Netanyahu in order to make change.

**VII.   (Count I)  Violation of the False Claims Act**

35. The False Claims Act imposes liability on a person or entity who "knowingly makes, uses, or causes to be made or used, a false record or statement material to an

obligation to pay or transmit money or property to the state or a local government" New York State Finance Law Section 189(g).

36. NIF states that they monitor their grantees activities carefully to ensure that the organizations are not doing anything problematic. Even though NIF knows that these organizations are electioneering, NIF has taken no actions to stop them, stop funding them and even goes so far as to promote these activities.

37. Thus, the Defendant violated the False Claims Act by preparing fraudulent tax returns as signed by different representatives as set forth above and electioneering in campaigns in Israel.

**VIII.   Relief Sought**

38. On behalf of the government, Relator is seeking judgment for the triple damages and civil penalties set forth in New York State Finance Law Section 189(h).

39. The fraudulent conduct described above resulted in avoided taxes on at least approximately 250 million dollars in income.

40. Assuming a combined state and local tax rate of approximately 15%, this resulted in approximately $37,500,000 in avoided taxes.  Multiplying this by 3 gives a total of approximately $110 million dollars.

**[continued on next page]**

41. Accordingly, Relator seeks judgment in the amount of $110 million dollars against Defendant and in favor of the State of New York, together with costs, interest, civil penalties, an appropriate qui tam award, and such other and further relief as the Court deems just.

Respectfully submitted,

_____

David Abrams, Attorney at Law
Attorney for Relator
Zionist Advocacy Center

305 Broadway Suite 601
New York, New York 10007
Tel. 212-897-5821
Fax  212-897-5811

Dated: July 16, 2020
       New York, NY