David Abrams, Attorney at Law
305 Broadway Suite 601
New York, New York 10007
Tel. 212-897-5821 dnabrams@gmail.com

United States District Court
Southern District of New York

_____
                                    )
State of New York ex rel.           )
TZAC, Inc.                          )
                                    )
           Plaintiff-Relator,       )
                                    )
       - against -                  )   No.: 1:20-cv-02955-GHW
                                    )
                                    )
New Israel Fund,                    )
                                    )
           Defendant.               )
_____ )

**<u>Memorandum of Law in Opposition to Motion to Dismiss</u>**

On the Brief: Chaya-Bracha Walkenfeld, (not admitted)

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

FACTS AND PROCEDURAL HISTORY ......................................................................... 1

ARGUMENT ....................................................................................................................... 2

   1.   The Public Disclosure Bar Does Not Bar This Action ........................... 2

   2. Federal Tax Law Does Not Preempt This Matter .................................... 7

   3. The Amended Complaint Does Plead Facts Which Show a Violation of § 501(c)(3) ............................................................................................ 8

      A.   TZAC Did Plead With Particularity That NIF Engaged in Electioneering ............................................................................................ 9

      B.   The Grantees Alleged Conduct Is Partisan Political Activity ..... 10

CONCLUSION .................................................................................................................. 13

# TABLE OF AUTHORITIES

## **Cases**

*Chen v. Emsl Analytical, Inc.* 966 F. Supp.2d 282, 298 (S.D.N.Y. 2013) ...................... 4

*Fulani v. League of Women Voters Education Fund*, 882 F.2d 621 (2d Cir. 1989) ........ 11

*Green Mountain R.R. Corp. v. Vermont*, 404 F.3d 638, 641 (2d Cir. 2005) ................... 7

*Ohio A. Phillip Randolph Institute v. Smith*, 335 F. Supp. 3d 988 (S.D. Ohio 2018) ..... 11

*Rockwell Int'l Corp. v. United States*, 127 S. Ct. 1397, 1409 (2007) ............................ 2

*Rucho v. Common Cause,* 139 S. Ct. 2484 (2019) ................................................... 11

*State ex rel. Seiden v. Utica First Ins. Co.*, 943 N.Y.S.2d 36, 39 (1st Dept. 2012) .......... 3

*United States ex rel. Foreman v. AECOM*, No. 16 cv 1960 (S.D.N.Y. Apr. 14, 2020) ..... 4

*US ex rel. Yannacopolous v. General Dynamics*, 315 F. Supp. 2d 939 (N.D. Ill. 2004) .... 6

*Vieth v. Jubelirer,* 541 U.S. 267 (2004) ............................................................... 11

## **Statutes & Rules**

20 N.Y.C.R.R. 1-3.4(b)(6)(i), (ii) ................................................................... 2,7

26 U.S.C § 501(c)(3) ................................................................................... 10

31 U.S.C. § 3729 .......................................................................................... 3

New York State Finance Law Section 188(3)(iii) .............................................. 10

New York State Finance Law Section 190(9)(b)(iii) ........................................ 3,4

New York State Finance Law Section 192(1-a) .................................................. 8

Rev. Rul. 72-513, 1972-2 C.B. 246 ................................................................... 11,12

Rule 9(b) ................................................................................................................ 8

Rule 12(b)(6) ......................................................................................................... 2

Rule 15(a)(1)(B) ................................................................................................ 1,2

United States Constitution, 1st amendment ........................................................ 11

The Zionist Advocacy Center ("TZAC" or "Relator"), hereby submits its opposition to Defendant's Motion to Dismiss the Complaint with Prejudice. Although the Motion is arguably moot as a result of Relator's filing an Amended Complaint, this Memorandum of Law is submitted in an abundance of caution.

## Introduction

Relator filed this *qui tam* action on behalf of the State of New York. The complaint alleges that Defendant, New Israel Fund ("NIF") falsely certified in its IRS 990 tax returns that it did not support or oppose candidates for public office. Relator alleges that contrary to its certifications NIF constantly and systematically supported and opposed candidates for public office in Israel.

TZAC has filed an amended complaint, as of right, pursuant to Rule 15. TZAC's amended complaint should not be dismissed. First, the action is not barred by the New York State public disclosure bar because TZAC's information as set forth in the amended complaint is based on information that is "merely on the internet" — an exception to the New York State public disclosure bar. Second, TZAC is not seeking to use state law to enforce federal tax law, but rather to use state law to enforce its own state tax law. Last, TZAC has sufficiently pleaded the facts which show that NIF violated its tax-exempt status and thus that NIF has committed fraud on the State of New York.

## Facts & Procedural History

NIF was founded in 1979 with a stated purpose of advancing democracy and equality of Israel, yet NIF constantly demonizes the Jewish state. (*See* Amended Complaint Para. 2) NIF has been recognized as exempt from federal and state income tax and publishes its 990 tax returns for review by the public. (*See* Amended Complaint Para. 5).

1

TZAC's complaint was filed in State Supreme Court in August 2019.  (Docket #1, Exhibit A) The State of New York declined to intervene; the State Court unsealed the action and after having been served; NIF removed it to this Court.  (*See* Docket #1)  The Complaint alleges that NIF engaged in electioneering while repeatedly making fraudulent statements on the form of its Form 990 tax returns whereby NIF certified that it did not support or oppose political candidates running for public office; and that as a result NIF was treated as exempt from taxes in New York.   (*See* Docket #1 Exhibit B).

Defendant has moved to dismiss pursuant to Rule 12(b)(6) and in response, Relator has amended the complaint as of right pursuant to Rule 15(a)(1)(B).  As set forth in more detail below, Defendant's motion should be denied.

These 990 tax returns are used by the state to determine the tax exemption of NIF. In the amended complaint, Relator cites New York Rule, 20 N.Y.C.R.R. 1-3.4(b)(6)(i), (ii) which explains that organizations which receive tax exemption from the federal government according to § 501(c)(3), will also be tax exempt according to New York State law.

## Argument

**1.      The Public Disclosure Bar Does Not Bar This Action**

As an initial matter, it should be noted that Relator has amended the complaint as of right pursuant to Rule 15(a)(1)(B) to excise allegations concerning transactions which could possibly be argued to have been disclosed in the news media.  Of course, in evaluating the application of the public disclosure bar, the Court should consider only the Amended Complaint.  *See Rockwell Int'l Corp. v. United States*, 127 S. Ct. 1397, 1409 (2007) ("Thus, when a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction.)

2

The New York False Claim Act's "public disclosure bar" does not prohibit this lawsuit. It must be emphasized that in 2010, The New York False Claims Act was amended. The purpose as then Assemblyman Eric Schneiderman said, was to make a "False Claims Act on steroids"[1] For this reason, the New York False Claims Act was amended to be stronger than its federal counterpart, by allowing more relators to be successful in *qui tam* actions. While the Federal False Claims Act -- 31 U.S.C. § 3729 et seq. -- states that the public disclosure bar applies to all matters disclosed in the news media, the State Code is different and stronger. New York State Finance Law Section 190(9)(b)(iii) makes clear that "allegations or transactions are not publicly disclosed in the news media merely because information of allegations or transactions have been posted on the internet or on a computer network." This section was added in during the 2010 amendment process.

As set forth in more detail below, the Amended Complaint is limited to allegations that clearly fall outside New York State's generous standards; put simply, all the allegations concern transaction that are on websites but not news media.

NIF's citation of *State ex rel. Seiden v. Utica First Ins. Co*., 943 N.Y.S.2d 36, 39 (1st Dept. 2012) is misguided. *Seiden* was filed in 2009 before the New York False Claims Act was amended, so it clearly has nothing to do with this case at issue. Furthermore, in *Seiden* the Court ruled that it needed to look at federal law when interpreting state law regarding what constitutes a reverse false claim. However, the public disclosure bar section of the New York False Claims Act is no longer identical to the public disclosure bar of the Federal False Claims Act.

It must be emphasized that this case is not a parasitic case where Relator learned about fraud through casual perusal of newspaper articles. Instead, this case took months of research and

---

[1] https://www.nysenate.gov/newsroom/press-releases/eric-t-schneiderman/senator-eric-t-schneiderman-shepherds-historic-anti

3

work to pull together all the pieces and be able to allege that NIF is electioneering. Therefore, the policy behind the public disclosure bar is upheld by not dismissing this case pursuant to the public disclosure bar.

The 990 tax returns do not trigger the public disclosure bar because even assuming that they are government reports, they do not say anything substantial about the fraud. In fact, the 990 tax returns give absolutely no indication that there was any fraud.  In *United States ex rel. Foreman v. AECOM*, No. 16 cv 1960 (S.D.N.Y. Apr. 14, 2020), the Court ruled that, "the bar is triggered if 'material elements' of the fraud have been publicly disclosed."  *See also Chen v. Emsl Analytical, Inc.* 966 F. Supp.2d 282, 298 (S.D.N.Y. 2013) ("earlier disclosures will bar a relator's claim if they were 'sufficient to set the government squarely upon the trail of the alleged fraud.") (citation omitted).  The IRS 990 forms at issue in this matter do not set the government on the trail of any fraud.

The same is true regarding Relator's allegations of the identity of NIF's grantees. This grant information, to the extent it is disclosed through any news media outlets, still does not trigger the public disclosure bar because knowing to which organizations NIF gives grants does not set the government on the trail of fraud.

The electioneering that took place and is covered by Exhibits F, G1, G2, H, I1, I2, I3, I5 in NIF's Motion to Dismiss, will not be discussed here as allegations concerning the transactions in those exhibits are not in the Amended Complaint.

The electioneering conduct alleged in the Amended Complaint is not publicly disclosed in the news media. There is no public disclosure as defined by Finance Law Section 190(9)(b)(iii) because all the allegations fell into an exception; they were all "merely… posted on the internet or on a computer network." A company's own website clearly does not constitute

news media, except when that company is itself a news organization. NIF has nowhere claimed to be a news organization, rather it is a charitable organization. Furthermore, anything posted on an organization's own Facebook or other social media accounts is not news media because it is used as an extension to, or even in some cases instead of, an organization's own website. Thus, NIF's own website as well as its Facebook page does not constitute news media and is just mere posting on the internet. Additionally, NIF's grantees' websites and Facebook pages are merely posted on the internet and not news media.

The New York Assembly purposely added in an exception to news media, to ensure that the New York False Claims Act would be stronger than its federal counterpart. NIF's website as well as its' grantees' websites are not news media, because otherwise that amendment to the New York Act would have been extraneous. In its Motion to Dismiss, even NIF admits that its own website may not constitute news media. NIF states, "but even if NIF's website did not quality as 'news media,' the grant information would still be publicly disclosed through other outlets." NIF gives other examples of where its grantee information is found because it is not convinced that its own website constitutes news media. However, in that situation, as mentioned previously, the public disclosure bar does not apply because the grantee information does not alert the government to fraud.

Furthermore, according to NIF's definition of the New York State public disclosure bar no complaint could be successful except for one brought under the original source exception, which is clearly not what the State assembly intended. Thus, all the allegations of electioneering fall outside the public disclosure bar.

There is no news report regarding the allegation that NIF helped its grantee to gather names for a petition to disqualify a candidate. See Amended Complaint Para. 24. There is an

5

article on NIF's website, which as explained above, does not constitute news media. Relator alleges that Israel Religious Action Center ("IRAC") electioneered in front of the Central Election Commission and Supreme Court in 2015. See Amended Complaint Para. 27. These allegations were not covered in news reports. News reports did cover the proceedings; however, importantly the news reports failed to mention that it was an attorney from IRAC who presented the case. (See exhibit G3) Mossawa electioneered through its own website, Amended Complaint Para. 29, and as explained previously merely posting on the internet is not news media. Mossawa's sister organization was acting as an extension of Mossawa in its posting and is thus also not news media.   Similarly, Relator's allegations concerning Adalah are limited to matters on Adalah's (and NIF's) own web sites as opposed to news media.

Adam Teva, and Council for Peace and Security's ("CPS") electioneering activities which were discussed in the Amended Complaint Paragraphs 30 and 34 were not publicly disclosed via news media. Adam Teva electioneered by asking candidates to sign a pledge. The request to sign the pledge as well as the pledge itself was on its own website and written in the Hebrew language.  CPS posted big signs in Israel; however, there is no indication on the signs that they are from Council for Peace and Security, and the signs are also written in Hebrew. Furthermore, while CPS has a Facebook page and YouTube, the signs and videos on these sites are in Hebrew, so the average American would not understand them.  Even if these Hebrew signs had been published in the news media, they would not count.   In *US ex rel. Yannacopolous v. General Dynamics*, 315 F. Supp. 2d 939 (N.D. Ill. 2004), the court ruled that there is no public disclosure to the American public when the information is divulged in a foreign publication especially if published in a foreign language.

**2.      Federal Tax Law Does Not Preempt This Matter.**

TZAC's Amended Complaint does not seek to use New York's False Claims Act to enforce federal tax law, but rather to use New York's False Claims Act to enforce New York State Tax Law. As explained in the Amended Complaint Para. 22, 20 N.Y.C.R.R. 1-3.4(b)(6)(i), (ii) states that organizations which receive § 501(c)(3) tax exemption from the federal government, will also be tax exempt according to New York State law. The complaint alleges that when NIF filed its 990 tax return forms on the state, it made fraudulent certifications. Thus, Relator is attempting to enforce New York State Tax Law which mirrors the federal law.

Congress can restrict litigation concerning federal tax-law compliance, but Congress cannot restrict litigation in terms of state tax law compliance.

Defendant erroneously relies on *Green Mountain R.R. Corp. v. Vermont*, 404 F.3d 638, 641 (2d Cir. 2005) to claim that this case is preempted by federal law. However, in *Green Mountain* the complaint was dismissed because federal law expressly preempts a state law by giving the Surface Transportation Board exclusive jurisdiction over certain issues. In this case, the federal government does not take exclusive jurisdiction over taxes, and instead state and federal government each regulate its own taxes. The Court explains in *Green* that "State law is preempted by federal law when: (1) the preemptive intent is "`explicitly stated in [a federal] statute's language or implicitly contained in its structure and purpose'"; (2) state law "actually conflicts with federal law"; or (3) "federal law so thoroughly occupies a legislative field `as to make reasonable the inference that Congress left no room for the States to supplement it.'" In this case none of those situations apply. There is no preemptive intent in the United States Federal Tax laws, state law does not conflict with federal law and all fifty states regulate their own tax

7

laws which make it clear that Congress has left room for the states to supplement federal tax law with state tax law.

The Internal Revenue Service ("IRS") has authority to determine if organizations will receive *federal* tax-exempt status. New York State, invoking its own authority, decided to use IRS determinations of tax exemption to declare organizations tax exempt for state purposes as well. New York State is well within its right to rule on its own tax law.

The New York State False Claims Act specifically gives Relators the right to bring actions relating to its tax laws. The fact that the Federal False Claims Act does not give Relators the right to bring actions relating to its tax laws is not germane because this action is brought on behalf of the state and the state law expressly allow Relators the right to bring *qui tam* actions relating to its tax law.

**3.      The Amended Complaint Does Plead Facts Which Show a Violation of § 501(c)(3)**

At the outset, it should be noted that the New York State False Claims Act contains a substantive pleading standard which relieves relators from the obligation to plead fraud with particularity:

> [I]n pleading an action brought under this article the qui tam plaintiff shall not be required to identify specific claims that result from an alleged course of misconduct, or any specific records or statements used, if the facts alleged in the complaint, if ultimately proven true, would provide a reasonable indication that one or more violations of section one hundred eighty-nine of this article are likely to have occurred, and if the allegations in the pleading provide adequate notice of the specific nature of the alleged misconduct to permit the state or a local government effectively to investigate and defendants fairly to defend the allegations made.

New York State Finance Law Section 192(1-a).  Nevertheless, the Court need not reach the question of whether the *Erie* doctrine applies to this provision because the Amended Complaint clearly provides dates, times, and other sufficient particulars to comply with Rule 9(b).

Many of the electioneering allegations, found in the Amended Complaint, describe conduct by NIF's grantees because NIF is a charitable organization and much of its work is accomplished through distributing grants. Furthermore, NIF has a requirement on its website which states that NIF does not give money to organizations which "participate in partisan political activity." (Amended Complaint Para. 31). It seems that NIF has such a requirement in order to comply with its tax-exempt status of not supporting or opposing candidates for public office. However it appears, NIF pays no heed to its own requirement, looks the other way, and in some cases specifically gives money to organizations which electioneer.

Where Relator alleges improper partisan electioneering by NIF the Amended Complaint is not merely conclusory, but rather has particularity. Relator gave an approximate time frame for NIF's alleged misconduct and explained what and how NIF improperly electioneered. Relator alleged that NIF got involved in helping to gather names for a petition by sending out the petition and asking for signatures during the 2019 Israeli election season. See Amended Complaint Para. 24.

The alleged conduct performed by NIF's grantees clearly constitutes prohibited electioneering. Federal law prohibits supporting or opposing candidates for public office. The amended complaint does not allege that NIF incidentally benefited and harmed candidates, but rather purposely benefited and harmed candidates. TZAC's effort to enforce basic state tax law should not be rejected because that will hinder the state in the future from enforcing its own tax laws.

### A. TZAC Did Plead With Particularity That NIF Engaged in Electioneering

The Amended Complaint alleges that multiple NIF grantees engaged in conduct which constitutes electioneering. Even if NIF was not directly involved, NIF was supportive of its

9

grantees in those efforts and posted that it was proud of its grantees for their work; in essence, that is indirect electioneering. It is analogous to a grantor declaring how proud it is that its grantee endorsed a political candidate, thereby leading people to think that the grantor is also endorsing that political candidate.

As previously mentioned, NIF has a requirement that all of its grantees must not be involved in electioneering; however, when it is time for NIF to put that requirement into practice NIF turns the other way. Furthermore, the Amended Complaint Para. 32 discusses that NIF knows about all the activities of its grantees because NIF requires that the grantees report information and NIF itself monitors the actions of its grantees to ensure that the grantees are following NIF's requirements. Thus, even putting aside NIF's direct activities in collecting signatures, the allegations in the Amended Complaint show with particularity that at a minimum NIF acted recklessly with respect to its grantees' electioneering activities. *See* New York State Finance Law Section 188(3)(iii) ("knowingly" includes "acting in reckless disregard for the truth or falsity of [] information.")

Additionally, Relator pleaded with particularity that NIF engaged in fraud. Relator gave the details as to what was answered in the 990 tax return form, who signed it and when. See Amended Complaint Para. 9-20.

### B. The Grantees Alleged Conducted Is Partisan Political Activity

TZAC alleged grantee conduct that violates 26 U.S.C § 501(c)(3). As set forth in detail in the Amended Complaint in this matter, Relator's allegations do not merely show permissible issue advocacy, rather, Relator's allegations show that NIF has repeatedly engaged in promoting and opposing candidates running for public office. NIF has been using what it calls issue advocacy as an excuse to intervene in campaigns and in some cases NIF's grantees clearly

electioneered by advising voters to vote against specific candidates. As set forth in NIF's Motion to Dismiss, NIF agrees that the First Amendment to the United States Constitution does not prohibit electioneering restrictions on 501(c)(3) organizations, and as set forth in more detail below, NIF's actions clearly constitute electioneering.

As set forth in the Amended Complaint, NIF's grantees advocated for certain parties and candidates to be banned from running in the elections and other parties and candidates to be allowed. This activity does not incidentally benefit and harm political candidates, but purposely benefits and harms particular candidates. *Fulani v. League of Women Voters Education Fund*, 882 F.2d 621 (2d Cir. 1989) has no bearing on this case. In *Fulani* the court ruled that the Fund was holding two separate debates for the democrat and republican primary, not a general election debate and since Fulani was only running in the general election, the Fund did nothing wrong by not allowing her to join the debate. *See id.* at 628-630. In that case, the Fund was not electioneering because Fulani was not running in that election. Here, the activity purposely benefits and harms candidates in specific elections. The American Civil Liberty Union Foundation ("ACLU") cases related to *Ohio A. Phillip Randolph Institute v. Smith*, 335 F. Supp. 3d 988 (S.D. Ohio 2018) and its briefs relating to *Rucho v. Common Cause,* 139 S. Ct. 2484 (2019) and *Vieth v. Jubelirer,* 541 U.S. 267 (2004) have no bearing on this case. In those matters, the ACLU was trying to strike down partisan gerrymanders which incidentally had a bearing on specific candidates or parties. In this case, harming and benefiting candidates was not a side effect of NIF's actions but the main purpose.

Further, Rev. Rul. 72-513, 1972-2 C.B. 246 has no bearing on this case. In that case, the Internal Revenue Service ruled that a university did not engage in partisan political activity by providing office space and financial support to a student newspaper that endorsed candidates.

The reasoning behind this ruling clearly has no implication on this case. An organization organized for an educational purpose is exempt under the code and educational means training or instruction to develop his capabilities. In that case, the newspaper is an academic program or function and editorial opinions which endorse candidates is considered a feature in legitimate journalism. Here NIF is not an educational institution, but rather a charitable one. NIF is not supporting and opposing candidates as an extension of any educational policy, but rather NIF chooses its grantees and gives money and support to organizations with which NIF agrees. Thus, NIF has the responsibility to choose carefully, and NIF on its own website says that one of its funding requirements is to not give funding to organizations which electioneer. Furthermore, here the publication is allowed to fund editorial positions which endorse political candidates; however, a president of a university would not be allowed to endorse a political candidate in a newspaper, even if the president payed for that section of the newspaper with his personal funds and writes that his endorsement is just a personal opinion[2]. This makes it clear that NIF as a charitable organization, not educational, definitely cannot use Rev. Rul. 72-513, 1972-2 C.B. 246 to claim that their electioneering actions are allowed.

      The Amended Complaint Para. 30 explains that Adam Teva, one of NIF's grantees asked candidates to pledge to follow a certain environmental protocol. Adam Teva posted the list of candidates who took that pledge. That is clear electioneering and does not fall into the realm of issue advocacy. Furthermore, Council for Peace and Security, Amended Complaint Para. 34 clearly opposed candidates for office when they posted signs that Benjamin Netanyahu must be voted out of office. That is clearly not merely promoting issue advocacy but electioneering.

---

[2] https://www.irs.gov/pub/irs-drop/rr-07-41.pdf

Council for Peace and Security, as explained in the Amended Complaint, is an important part of NIF's strategy to promote progressive policies. (*See* Amended Complaint Para. 33).

It is not ambiguous whether the alleged conduct of NIF is a violation of its tax-exempt status. It is clear that the alleged conduct of NIF has been to engage in partisan political activity which violates its tax-exempt status. NIF knows that telling people to vote against a candidate is clearly electioneering. NIF had no problem funding and working together with CPS even though CPS was clearly telling voters to not vote for a specific candidate. Furthermore, NIF as alleged in the Amended Complaint, monitors its grantees' actions, so NIF has knowledge (or at a minimum is reckless) as to whether its grantees have been electioneering on a constant basis.

## Conclusion

For the foregoing reasons, TZAC's Amended Complaint is not barred by New York's public disclosure bar nor preempted by federal law and does plead a valid claim. For all of these reasons, Relator's Amended Complaint should not be dismissed. Further, in the event that the Court deems the Amended Complaint to be deficient, Relator respectfully requests a further opportunity to amend.

*[signature]*

David Abrams, Attorney at Law
Attorney for Plaintiff-Relator
Zionist Advocacy Center

501 Broadway Suite 601
New York, NY 10007
Tel. 212-897-5821
Fax 212-897-5811

Dated: July 16, 2020
New York, New York