David Abrams, Attorney at Law
305 Broadway Suite 601
New York, New York 10007
Tel. 212-897-5821 dnabrams@gmail.com

United States District Court
Southern District of New York
_____

|  |  |  |
|---|---|---|
| State of New York ex rel. | ) | |
| TZAC, Inc. | ) | |
| | ) | |
| Plaintiff-Relator, | ) | |
| | ) | |
| - against - | ) | No.: 1:20-cv-02955-GHW |
| | ) | |
| | ) | |
| New Israel Fund, | ) | |
| | ) | |
| Defendant. | ) | |

_____)

**<u>Memorandum of Law in Opposition to Motion to Dismiss TZAC's Amended Complaint</u>**

On the Brief: Chaya-Bracha Walkenfeld, (not admitted)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.......................................................................................ii

INTRODUCTION..................................................................................................1

FACTS AND PROCEDURAL HISTORY .........................................................2

ARGUMENT ........................................................................................................3

   1.   The Public Disclosure Bar Does Not Bar This Action............................3

   2. TZAC's Tax Fraud Theory is Consistent with New York Law .............7

   3. The Activities Alleged in the Complaint Were Knowing Violations of § 501(c)(3)..........................................................................................9

      A.   TZAC has Attributed the Conduct of NIF's Grantees to NIF........9

      B.   TZAC Did Plead that NIF "Knowingly Misrepresented Its Compliance with § 501(c)(3) ...................................................................10

CONCLUSION.....................................................................................................14

# TABLE OF AUTHORITIES

**Cases**

*Chen ex rel. U.S. v. Emsl Analytical, Inc.* 966 F. Supp.2d 282, 298 (S.D.N.Y. 2013) .4, 5

*Fulani v. League of Women Voters Education Fund*, 882 F.2d 621 (2d Cir. 1989)........11

*Ohio A. Phillip Randolph Institute v. Smith*, 335 F. Supp. 3d 988 (S.D. Ohio 2018) .....11

*Rucho v. Common Cause,* 139 S. Ct. 2484 (2019)..................................................11

*State ex rel. Seiden v. Utica First Ins. Co.*, 943 N.Y.S.2d 36, 39 (1st Dept. 2012) ..........4

*United States ex rel. Foreman v. AECOM*, No. 16 cv 1960 (S.D.N.Y. Apr. 14, 2020).....4

*US ex rel. Yannacopolous v. General Dynamics*, 315 F. Supp. 2d 939 (N.D. Ill. 2004)....7

*Vieth v. Jubelirer,* 541 U.S. 267 (2004) .............................................................11

*State ex rel. Raw Data Analytics LLC v. JP Morgan Chase & Co.*, 108 N.Y.S.3d 796, 802 & n.3 (Sup. Ct. 2019)..........................................................................................4

*U.S. ex rel. Radcliffe v. Purdue Pharma, L.P.*, 582 F. Supp. 2d 766, 772 (W.D. Va. 2008) ...........................................................................................................5

**Statutes & Rules**

20 N.Y.C.R.R. 1-3.4(b)(6)(i), (ii) .........................................................................7

26 U.S.C § 501(c)(3) ...........................................................................7, 9, 10

31 U.S.C. § 3729...................................................................................................3

New York State Assembly Memorandum in Support of Legislation, ch 379 at 9, 2010 NY Assembly Bill A11568-A, Bill Jacket...................................................................5

N.Y. Dep't Tax. & Fin., Opinion Letter on Pet. No. C100317A, 2010 WL 2721216 (Jun 23, 2010)...........................................................................................................8

New York State Finance Law Section 188(3)(iii) .................................................11

New York State Finance Law Section 190(9)(b)(iii) ............................................3,5

Rev. Rul. 72-513, 1972-2 C.B. 246 (1972) .........................................................12

Rule 12(b)(6) .............................................................................................2

Rule 15(a)(1)(B) .......................................................................................1,2

The Zionist Advocacy Center ("TZAC" or "Relator"), hereby submits its opposition to Defendant's Motion to Dismiss TZAC's Amended Complaint with Prejudice.

## Introduction

Relator filed this *qui tam* action on behalf of the State of New York. The complaint alleges that Defendant, New Israel Fund ("NIF") falsely certified in its IRS 990 tax returns that it did not "direct[ly] or indirect[ly]" support or oppose candidates for public office. Relator alleges that contrary to its certifications NIF constantly and systematically supported and opposed candidates for public office in Israel.

TZAC filed an amended complaint, as of right, pursuant to Rule 15. TZAC's amended complaint should not be dismissed. First, the action is not barred by the New York State public disclosure bar because TZAC's information as set forth in the amended complaint is based on information that is "merely on the internet" — an exception to the New York State public disclosure bar and information in a foreign language another exception to the disclosure bar. Second, TZAC's theory of fraud is based off of NIF's New York tax obligations which require tax exempt organizations to either file a 990 tax return with the Internal Revenue Service or file a CT-247 form which requires that "the entity meet the qualifications for exemption from federal income tax." In both circumstances NIF would in effect be fraudulently certifying that it does not support or oppose candidates for public office. Last, TZAC has sufficiently pleaded the facts which show that NIF has knowingly violated its tax-exempt status and thus that NIF has committed fraud on the State of New York. For all of these reasons, the Amended Complaint should not be dismissed.

## Facts & Procedural History

NIF was founded in 1979 with a stated purpose of advancing democracy and equality of Israel, yet NIF constantly demonizes the Jewish state. (*See* Amended Complaint Para. 2) NIF has been recognized as exempt from federal and state income tax and publishes its 990 tax returns for review by the public. (*See* Amended Complaint Para. 5).

TZAC's complaint was filed in State Supreme Court in August 2019. (Docket #1, Exhibit A). The Complaint alleges that NIF maintained its tax-exempt status both at the Federal level and in New York by certifying that it did not "direct[ly] or indirect[ly]" engage in electioneering by supporting or opposing candidates for public office. The Complaint also sets forth numerous examples where NIF did in fact engage in electioneering either directly or through its grantees. (*See* Amended Complaint Para. 24, 25, 27, etc.) Thus, NIF maintained its tax-exempt status by means of fraudulent certifications and avoided millions of dollars in New York State Taxes.

The State of New York declined to intervene; the State Court unsealed the action and after having been served; NIF removed it to this Court. (*See* Docket #1) The Complaint alleges that NIF engaged in electioneering while repeatedly making fraudulent statements on the form of its Form 990 tax returns whereby NIF certified that it did not support or oppose political candidates running for public office; and that as a result NIF was treated as exempt from taxes in New York. (*See* Docket #1 Exhibit B).

Defendant moved to dismiss pursuant to Rule 12(b)(6) and in response, Relator amended the complaint as of right pursuant to Rule 15(a)(1)(B) and submitted an opposition brief. The Court ruled the Motion to Dismiss as well as the Opposition Brief to be moot due to the Amended Complaint. (*See* Docket #33)

As set forth in more detail below, NIF's representations to the Internal Revenue Service to maintain its federal tax-exempt status result in state level tax exemption of NIF. Further as set forth in more detail below, when non-profits are not recognized by the federal government as a tax-exempt organization, they must nonetheless complete form CT-247 which requires certification that the not-for-profit meets the Federal standards for exemption. Thus, there is no way for a not-for-profit to obtain exemption from New York taxes without certifying compliance with the federal standards.

## Argument

**1.    The Public Disclosure Bar Does Not Bar This Action**

The New York False Claim Act's "public disclosure bar" does not prohibit this lawsuit. It must be emphasized that in 2010, The New York False Claims Act was amended. The purpose as then Assemblyman Eric Schneiderman said, was to make a "False Claims Act on steroids"[1]  For this reason, the New York False Claims Act was amended to be stronger than its federal counterpart, by allowing more relators to be successful in *qui tam* actions. While the Federal False Claims Act -- 31 U.S.C. § 3729 et seq. -- states that the public disclosure bar applies to all matters disclosed in the news media, the State Code is different and stronger. New York State Finance Law Section 190(9)(b)(iii) makes clear that "allegations or transactions are not publicly disclosed in the news media merely because information of allegations or transactions have been posted on the internet or on a computer network." This section was added in during the 2010 amendment process.

---

[1] https://www.nysenate.gov/newsroom/press-releases/eric-t-schneiderman/senator-eric-t-schneiderman-shepherds-historic-anti

As set forth in more detail below, the Amended Complaint is limited to allegations that clearly fall outside New York State's generous standards; put simply, all the allegations concern transaction that are on websites but not news media.

NIF's citation of *State ex rel. Seiden v. Utica First Ins. Co.*, 943 N.Y.S.2d 36, 39 (1st Dept. 2012) is misguided. *Seiden* was filed in 2009 before the New York False Claims Act was amended, so it clearly has nothing to do with this case at issue. Furthermore, in *Seiden* the Court ruled that it needed to look at federal law when interpreting state law regarding what constitutes a reverse false claim. However, the public disclosure bar section of the New York False Claims Act is no longer identical to the public disclosure bar of the Federal False Claims Act. NIF's citation of *State ex rel. Raw Data Analytics LLC v. JP Morgan Chase & Co.*, 108 N.Y.S.3d 796, 802 & n.3 (Sup. Ct. 2019) is similarly misguided because *Raw Data Analytics* discusses federal law when interpreting state law about reverse false claims, not in regards to the public disclosure bar. NIF's citation of *Chen ex rel. U.S. v. EMSL Analytical, Inc.*, 966 F. Supp. 2d 282, 305 (S.D.N.Y. 2013) is similarly not applicable because it was a *federal* action.

It must be emphasized that this case is not a parasitic case where Relator learned about fraud through casual perusal of newspaper articles. Instead, this case took months of research and work to pull together all the pieces and be able to allege that NIF is electioneering. Therefore, the policy behind the public disclosure bar is upheld by not dismissing this case pursuant to the public disclosure bar.

The 990 tax returns do not trigger the public disclosure bar because even assuming that they are government reports, they do not say anything substantial about the fraud. In fact, the 990 tax returns give absolutely no indication that there was any fraud. In *United States ex rel. Foreman v. AECOM*, No. 16 cv 1960 (S.D.N.Y. Apr. 14, 2020), the Court ruled that, "the bar is

triggered if 'material elements' of the fraud have been publicly disclosed."  *See also Chen ex rel. U.S. v. Emsl Analytical, Inc.* 966 F.  Supp.2d 282, 298 (S.D.N.Y. 2013) ("earlier disclosures will bar a relator's claim if they were 'sufficient to set the government squarely upon the trail of the alleged fraud.") (citation omitted).  The IRS 990 forms at issue in this matter do not set the government on the trail of any fraud.

The same is true regarding Relator's allegations of the identity of NIF's grantees.  This grant information, to the extent it is disclosed through any news media outlets, still does not trigger the public disclosure bar because knowing to which organizations NIF gives grants does not set the government on the trail of fraud.

The electioneering conduct alleged in the Amended Complaint is not publicly disclosed in the news media.  There is no public disclosure as defined by Finance Law Section 190(9)(b)(iii) because all the allegations fell into an exception; they were all "merely… posted on the internet or on a computer network."  That amendment was also noted in New York State Assembly Memorandum in Support of Legislation, ch 379 at 9, 2010 NY Assembly Bill A11568-A, Bill Jacket.

Under the more constricted federal False Claims Act the court in *U.S. ex rel. Radcliffe v. Purdue Pharma, L.P.*, 582 F. Supp. 2d 766, 772 (W.D. Va. 2008) did not construe all information on the internet to constitute news media.  And, as mentioned previously, the State False Claims Act and public disclosure bar was written to be stronger than its federal counterpart and should be construed as such.

 A company's own website clearly does not constitute news media, except when that company is itself a news organization.  NIF has nowhere claimed to be a news organization, rather it is a charitable organization.  Furthermore, anything posted on an organization's own

Facebook or other social media accounts is not news media because it is used as an extension to, or even in some cases instead of, an organization's own website. Thus, NIF's own website as well as its Facebook page does not constitute news media and is just mere posting on the internet. Additionally, NIF's grantees' websites and Facebook pages are merely posted on the internet and not news media.

NIF's website as well as its' grantees' websites are not news media, because otherwise that amendment to the New York Act would have been extraneous.

Furthermore, according to NIF's definition of the New York State public disclosure bar no complaint could be successful except for one brought under the original source exception, which is clearly not what the State assembly intended. Thus, all the allegations of electioneering fall outside the public disclosure bar.

There is no news report regarding the allegation that NIF helped its grantee to gather names for a petition to disqualify a candidate. See Amended Complaint Para. 24. There is an article on NIF's website, which as explained above, does not constitute news media. Relator alleges that Israel Religious Action Center ("IRAC") electioneered in front of the Central Election Commission and Supreme Court in 2015. See Amended Complaint Para. 27. These allegations were not covered in news reports. News reports did cover the proceedings; however, importantly the news reports failed to mention that it was an attorney from IRAC who presented the case. Mossawa electioneered through its own website, Amended Complaint Para. 29, and as explained previously merely posting on the internet is not news media. Mossawa's sister organization was acting as an extension of Mossawa in its posting and is thus also not news media. Similarly, Relator's allegations concerning Adalah are limited to matters on Adalah's (and NIF's) own web sites as opposed to news media.

Adam Teva, and Council for Peace and Security's ("CPS") electioneering activities which were discussed in the Amended Complaint Paragraphs 30 and 34 were not publicly disclosed via news media. Adam Teva electioneered by asking candidates to sign a pledge. The request to sign the pledge as well as the pledge itself was on its own website and written in the Hebrew language. CPS posted big signs in Israel; however, there is no indication on the signs that they are from Council for Peace and Security, and the signs are also written in Hebrew. Furthermore, while CPS has a Facebook page and YouTube, the signs and videos on these sites are in Hebrew, so the average American would not understand them. Even if these Hebrew signs had been published in the news media, they would not count. In *US ex rel. Yannacopolous v. General Dynamics*, 315 F. Supp. 2d 939 (N.D. Ill. 2004), the court ruled that there is no public disclosure to the American public when the information is divulged in a foreign publication especially if published in a foreign language. Exhibit G4 does not refute this point because it is not clear that the organization mentioned in Exhibit G4 is the same organization as CPS.

2.      **TZAC's Tax Fraud Theory is Consistent with New York Law.**

TZAC contends that NIF defrauded New York by using a fraudulently maintained § 501(c)(3) tax exemption to avoid New York taxes under 20 N.Y.C.R.R. § 1-3.4(b)(6). The regulation as understood and explained by TZAC is understood applied the same way by the State of New York.

NIF is misguided when it says that it only needs to be a non-profit in order to receive tax exemption because there is a subparagraph which qualifies this sentence when it says, "If a corporation organized other than for profit is denied exemption from taxation under the Internal Revenue Code, such corporation will be presumed subject to [the franchise tax]."

Defendant cites Advisory Op. Pet. No. C100317A, 2010 WL 2721216, at *2 (N.Y. Dep't Tax. & Fin. Jun 23, 2010) and claims that this proves that it does not need to be a recognized non-profit by the Internal Revenue Service in order to be exempt from New York State Taxes. This argument is meritless since New York does not have an automatic tax exemption for all not-for-profits. The opinion explains, a non-profit which does not have federal tax exemption is presumed to be taxable, unless it fills out a form in which it has to certify that it can be qualified as a federal tax-exempt organization. If such organizations do not qualify by obtaining a federal exemption, the alternate path still requires them to certify compliance with the same (federal) standards.

Indeed, the very opinion relied upon by the Defendant makes this clear. The opinion relied on by NIF directed the taxpayer at issue to complete State Form CT-247 which form contains the following question and statement:

**Does the entity meet the qualification for exemption from federal income tax? If No, stop. You do not qualify as an exempt organization.**

A copy of Form CT-247 is attached hereto for the Court's reference. If the Court deems it necessary, Relator respectfully requests leave to further amend the Amended Complaint in this matter to incorporate Form CT-247 by reference.

"Failure to have a federal exemption creates only a presumption of taxability" and "this presumption may be rebutted" if the organization is able to certify that it meets the qualification for exemption from federal income tax.

Thus it is clear that in order to qualify for a New York tax exemption, not-for-profits must adhere (and certify adherence to) to the federal requirements whether it is done indirectly (as was the case with NIF) or indirectly. Either way, NIF was not entitled to New York tax exemption and maintained its status only through false certifications.

The false certifications by NIF are material because if NIF was not falsely certifying in the 990 forms it would have to be falsely certifying in the CT-247 form, so the false certification causes NIF to be liable under the New York False Claims Act.

**3.     The Activities Alleged in the Complaint Were Knowing Violations of § 501(c)(3):**

It is clear from the Amended Complaint that NIF knew that its actions were in violation of Section 501(c)(3).  First, it electioneered itself and it had a requirement that its grantees do not electioneer, to retain its tax-exempt status.  In any event the 990 certification clearly provides that electioneering cannot be done "direct[ly] or indirect[ly]." Second the conduct alleged is a clear violation and "knowingly" includes, "act[ing] in reckless disregard of the truth or falsity of the information" and "acting in deliberate ignorance of the truth or falsity of the information" New York State Finance Law Section 188(3).

**A.     TZAC has Attributed the Conduct of NIF's Grantees to NIF**

Many of the electioneering allegations, found in the Amended Complaint, describe conduct by NIF's grantees because NIF is a charitable organization and much of its work is accomplished through distributing grants.  Furthermore, NIF has a requirement on its website which states that NIF does not give money to organizations which "participate in partisan political activity."  (Amended Complaint Para. 31).  It seems that NIF has such a requirement in order to comply with its tax-exempt status of not supporting or opposing candidates for public office.  However it appears, NIF pays no heed to its own requirement, looks the other way, and in some cases specifically gives money to organizations which electioneer.

 The Amended Complaint alleges that multiple NIF grantees engaged in conduct which constitutes electioneering.  Even if NIF was not directly involved, NIF was supportive of its grantees in those efforts and posted that it was proud of its grantees for their work; in essence,

that is indirect electioneering. It is analogous to a grantor declaring how proud it is that its grantee endorsed a political candidate, thereby leading people to think that the grantor is also endorsing that political candidate. Indeed, the form 990 clearly applies to electioneering that is done "direct[ly] or indirect[ly]."

The Amended Complaint Para. 32 discusses that NIF knows about all the activities of its grantees because NIF requires that the grantees report information and NIF itself monitors the actions of its grantees to ensure that the grantees are following NIF's requirements. Thus, even putting aside NIF's direct activities in collecting signatures, the allegations in the Amended Complaint show with particularity that at a minimum NIF acted recklessly with respect to its grantees' electioneering activities. *See* New York State Finance Law Section 188(3)(iii) ("knowingly" includes "acting in reckless disregard for the truth or falsity of [] information.")

**B.** **TZAC Did Plead that NIF "Knowingly" Misrepresented Its Compliance with § 501(c)(3).**

As set forth in detail in the Complaint in this matter, Relator's allegations do not merely show permissible issue advocacy, rather, Relator's allegations show that NIF has repeatedly engaged in promoting and opposing candidates running for public office. TZAC's effort to enforce basic state tax law should not be rejected because that will hinder the state in the future from enforcing its own tax laws. For example, the Complaint alleges that Council for Peace and Security, a grantee of NIF, opposed Benjamin Netanyahu's race in the 2015 Israeli elections and worked to convince Israelis to vote against him. That falls under the most clear-cut definition of opposing a candidate for office.

Further, NIF states that because it did not know that what it was doing was illegal, and the False Claims Act has a knowledge requirement, it was not in violation. However "knowingly" does not mean only actual knowledge and includes, "act[ing] in reckless disregard

of the truth or falsity of the information" and "acting in deliberate ignorance of the truth or falsity of the information."  New York State Finance Law Section 188(3).

By supporting Council for Peace and Security, NIF either had actual knowledge that it was electioneering or was acting in reckless disregard of the truth.  The Internal Revenue Website states clearly that, "public statements of position (verbal or written) made on behalf of the organization in favor of or in opposition to any candidate for public office clearly violate the prohibition against political campaign activity."  New Israel Fund, through Council for Peace and Security clearly violated that directive.  If NIF did not even bother to do basic research on what constitutes electioneering, its conduct is clearly "knowing" within the meaning of the State False Claims Act.

As set forth in the Amended Complaint, NIF's grantees advocated for certain parties and candidates to be banned from running in the elections and other parties and candidates to be allowed.  This activity does not incidentally benefit and harm political candidates, but purposely benefits and harms particular candidates.  *Fulani v. League of Women Voters Education Fund*, 882 F.2d 621 (2d Cir. 1989) has no bearing on this case.  In *Fulani* the court ruled that the Fund was holding two separate debates for the democrat and republican primary, not a general election debate and since Fulani was only running in the general election, the Fund did nothing wrong by not allowing her to join the debate.  *See id.* at 628-630.  In that case, the Fund was not electioneering because Fulani was not running in that election.  Here, the activity purposely benefits and harms candidates in specific elections.  The American Civil Liberty Union Foundation ("ACLU") cases related to *Ohio A. Phillip Randolph Institute v. Smith*, 335 F. Supp. 3d 988 (S.D. Ohio 2018) and its briefs relating to *Rucho v. Common Cause,* 139 S. Ct. 2484 (2019) and *Vieth v. Jubelirer,* 541 U.S. 267 (2004) have no bearing on this case.  In those

matters, the ACLU was trying to strike down partisan gerrymanders which incidentally had a bearing on specific candidates or parties. In this case, harming and benefiting candidates was not a side effect of NIF's actions but the main purpose.

Further, Rev. Rul. 72-513, 1972-2 C.B. 246 has no bearing on this case. In that case, the Internal Revenue Service ruled that a university did not engage in partisan political activity by providing office space and financial support to a student newspaper that endorsed candidates. The reasoning behind this ruling clearly has no implication on this case. An organization organized for an educational purpose is exempt under the code and educational means training or instruction to develop his capabilities. In that case, the newspaper is an academic program or function and editorial opinions which endorse candidates is considered a feature in legitimate journalism. Here NIF is not an educational institution, but rather a charitable one. NIF is not supporting and opposing candidates as an extension of any educational policy, but rather NIF chooses its grantees and gives money and support to organizations with which NIF agrees. Thus, NIF has the responsibility to choose carefully, and NIF on its own website says that one of its funding requirements is to not give funding to organizations which electioneer. Furthermore, here the publication is allowed to fund editorial positions which endorse political candidates; however, a president of a university would not be allowed to endorse a political candidate in a newspaper, even if the president payed for that section of the newspaper with his personal funds and writes that his endorsement is just a personal opinion[2]. This makes it clear that NIF as a charitable organization, not educational, definitely cannot use Rev. Rul. 72-513, 1972-2 C.B. 246 to claim that their electioneering actions are allowed.

---

[2] https://www.irs.gov/pub/irs-drop/rr-07-41.pdf

It is not ambiguous whether the alleged conduct of NIF is a violation of its tax-exempt status.  It is clear that the alleged conduct of NIF has been to engage in partisan political activity which violates its tax-exempt status.  NIF knows that telling people to vote against a candidate is clearly electioneering.  NIF had no problem funding and working together with CPS even though CPS was clearly telling voters to not vote for a specific candidate.  Furthermore, NIF as alleged in the Amended Complaint, monitors its grantees' actions, so NIF has knowledge (or at a minimum is reckless) as to whether its grantees have been electioneering on a constant basis.

It is important to emphasize that if this matter proceeds, the heavens will not fall.  Under applicable law, the State of New York retains full authority to settle or dispose of this matter, even over Relator's objections.  Nor will there be a tidal wave of similar lawsuits inasmuch as the type of electioneering engaged in by the New Israel Fund is very unusual.

**[continued on next page]**

## Conclusion

For the foregoing reasons, TZAC's Amended Complaint is not barred by New York's public disclosure bar, is consistent with New York tax law, and does plead a valid claim. For all of these reasons, Relator's Amended Complaint should not be dismissed. Further, in the event that the Court deems the Amended Complaint to be deficient, Relator respectfully requests a further opportunity to amend.

David Abrams, Attorney at Law
Attorney for Plaintiff-Relator
Zionist Advocacy Center

501 Broadway Suite 601
New York, NY 10007
Tel. 212-897-5821
Fax 212-897-5811

Dated: September 13, 2020
New York, New York



Staple forms here

# CT-247
(8/11)

New York State Department of Taxation and Finance

# Application for Exemption from Corporation Franchise Taxes by a Not-for-Profit Organization

| Mailing name and address | Legal name of corporation | | Employer identification number | For office use only |
|---|---|---|---|---|
| | Mailing name *(if different from legal name)* <br> c/o | | | |
| | Number and street or PO box | City | State        ZIP code | |

| Principal business activity | | Date tax exemption claimed from | For audit use only |
|---|---|---|---|
| Form of organization *(mark an **X** in the appropriate box)* <br> Corporation ☐   Association ☐   Trust ☐   Other ☐ | | Business/officer telephone number <br> (        ) | |
| Date of formation | State or country of incorporation | | Taxable ☐        Exempt ☐ |

Indicate exact name of the law under which the entity was formed *(general corporation, not-for-profit, membership, etc.)*. Cite statutory provisions.

Federal return was filed on *(mark an **X** in one)*:   Form 990 ☐   Form 990-T ☐   Form 1120 ☐   Other: ☐ _____

**For lines 1 through 7, mark an *X* in the *Yes* or *No* box**

**1** Is the entity organized and operated as a not-for-profit organization?.................................................. Yes ☐   No ☐

**2** Is the entity authorized to issue capital stock? *(If Yes, also mark an **X** in the appropriate box below.)* ........................... Yes ☐   No ☐
   Title holding company ☐     Collective investment ☐     Other: ☐ _____
   List shareholders: _____

**3** Does any part of the net earnings of the organization benefit any officer, director, or member? ........................... Yes ☐   No ☐

**4** Does the entity meet the qualifications for exemption from federal income tax? *(See General information on page 2.)* ....... Yes ☐   No ☐
   If *No*, **stop.** You do not qualify as an exempt organization.

**5** Did the entity apply for federal exemption?.................................................................................... Yes ☐   No ☐
   If *Yes*, indicate date of exemption _____. Attach a copy of your federal exemption letter.

**6** Is the entity engaged in an unrelated business activity at a location in New York State? ...................................... Yes ☐   No ☐

**7** Is the entity operating as a trust under Internal Revenue Code (IRC) section 401(a) and exempt from federal
   income tax under IRC section 501(a)? ..................................................................................... Yes ☐   No ☐

**8** List location and type of activity for each office and other places of business *(attach separate sheet if necessary)*.

| Location | Nature of activity |
|---|---|
| | |
| | |

**9** List officers, employees, agents, and representatives in New York State and briefly describe their duties *(attach separate sheet if necessary)*.

| Name | Title | Duties |
|---|---|---|
| | | |
| | | |

**10** List type and use of real property owned in New York State *(attach separate sheet if necessary)*.

| Type | How used |
|---|---|
| | |
| | |

**11** Describe any New York State activities not shown above *(attach separate sheet if necessary)*.

| |
|---|
| |

**Certification:** I certify that this application and any attachments are to the best of my knowledge and belief true, correct, and complete. Willfully filing a false application is a misdemeanor punishable under the Tax Law.

| Authorized person | Printed name of authorized person | Signature of authorized person | | Official title | |
|---|---|---|---|---|---|
| | E-mail address of authorized person | | Telephone number <br> (        ) | | Date |
| Paid preparer use only *(see instr.)* | Firm's name *(or yours if self-employed)* | | Firm's EIN | | Preparer's PTIN or SSN |
| | Signature of individual preparing this application | Address | City | State | ZIP code |
| | E-mail address of individual preparing this application | | Preparer's NYTPRIN | | Date |