UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STATE OF NEW YORK *ex rel.* TZAC, INC.<br><br>　　　　　　Plaintiff-Relator,<br><br>v.<br><br>NEW ISRAEL FUND,<br><br>　　　　　　Defendant. | No. 1:20-cv-2955-GHW<br><br>**ORAL ARGUMENT REQUESTED** |

**REPLY IN SUPPORT OF NEW ISRAEL FUND'S
MOTION TO DISMISS TZAC'S AMENDED COMPLAINT**

Jeffrey S. Bucholtz, *Pro Hac Vice*
Gabriel Krimm, *Pro Hac Vice*
KING & SPALDING LLP
1700 Pennsylvania Ave., NW
Washington, DC 20006
Tel: (202) 626-2907
Fax: (202) 626-3737
jbucholtz@kslaw.com
gkrimm@kslaw.com

J. Emmett Murphy
KING & SPALDING LLP
1185 Avenue of the Americas
New York, NY 10036
Tel: (212) 556-2100
Fax: (212) 556-2222
jemurphy@kslaw.com

Brian Hauss
Arianna Demas
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
Tel: (212) 549-2604
Fax: (212) 549-2649
bhauss@aclu.org
ademas@aclu.org

*Counsel for Defendant New Israel Fund*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... II

INTRODUCTION ...................................................................................................................... 1

ARGUMENT ............................................................................................................................... 1

I.   The Public Disclosure Bar Prohibits This Action. .................................................... 1

II.  TZAC's Tax Fraud Theory Fails as a Matter of New York Law. .......................... 6

III. TZAC Has Failed to Plead that NIF Knowingly Violated § 501(c)(3). ................. 8

    A.   TZAC Has Failed to Attribute the Conduct of NIF's Grantees to NIF. ................... 8

    B.   TZAC Has Failed to Plead that NIF "Knowingly" Misrepresented Its
        Compliance with § 501(c)(3). ..................................................................................... 9

CONCLUSION ......................................................................................................................... 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*City of Chicago ex rel. Rosenberg v. Redflex Traffic Sys., Inc.*,
   No. 15 C 08271, 2016 WL 4203835 (N.D. Ill. Aug. 8, 2016) ............................................... 4

*In re Visiting Nurse Serv. of N.Y. Home Care*,
   840 N.E.2d 577 (N.Y. 2005) ................................................................................................ 8

*Nat'l Found., Inc. v. United States*,
   13 Cl. Ct. 486 (1987) ........................................................................................................... 9

*U.S. ex rel. Kirk v. Schindler Elevator Corp.*,
   601 F.3d 94 (2d Cir. 2010) ................................................................................................... 4

*U.S. ex rel. Kirk v. Schindler Elevator Corp.*,
   563 U.S. 401 (2011) ............................................................................................................. 4

*U.S. ex rel. Oliver v. Philip Morris USA, Inc.*,
   101 F. Supp. 3d 111 (D.D.C. 2015) ..................................................................................... 2

*U.S. ex rel. Purcell v. MWI Corp.*,
   807 F.3d 281 (D.C. Cir. 2015) ............................................................................................. 9

*U.S. ex rel. Radcliffe v. Purdue Pharma L.P.*,
   582 F. Supp. 2d 766 (W.D. Va. 2008) .............................................................................. 2, 5

*U.S. ex rel. Radcliffe v. Purdue Pharma L.P.*,
   600 F.3d 319 (4th Cir. 2010) ................................................................................................ 2

*U.S. ex rel. Yannacopolous v. Gen. Dynamics*,
   315 F. Supp. 2d 939 (N.D. Ill. 2004) ................................................................................ 4, 5

*United States v. Maria*,
   186 F.3d 65 (2d Cir. 1999) ................................................................................................... 5

*United States v. Mason*,
   692 F.3d 178 (2d Cir. 2012) ................................................................................................. 5

*United States v. Yip*,
   930 F.2d 142 (2d Cir. 1991) ................................................................................................. 5

**Statutes, Regulations, & Rules**

26 U.S.C. § 501(c)(3) ................................................................................................... *passim*

31 U.S.C. § 3730(e)(4)(A) ................................................................................................................4

N.Y. State Fin. Law § 188(7)(b) ......................................................................................................3

N.Y. State Fin. Law § 189(g) ...........................................................................................................4

N.Y. State Fin. Law § 190(9)(b)(iii) .................................................................................................2

20 N.Y.C.R.R. § 1-3.4(b)(6) ........................................................................................................6, 7

20 N.Y.C.R.R. § 2375.8(c) ..............................................................................................................7

20 N.Y.C.R.R. § 2376.4 ...................................................................................................................7

Rev. Rul. 68-489, 1968-2 C.B. 210 (1968) .....................................................................................8

IRS Info. Ltrs., 2019 WL 3048649 (June 28, 2019) ........................................................................8

N.Y. Dep't Tax. & Fin., Opinion Letter on Pet. No. C100317A,
    2010 WL 2721216 (Jun. 23, 2010) ........................................................................................6, 7

**Other Authority**

Camille Ryan, U.S. Census Bureau, U.S. Dep't of Comm., ACS-22,
    Language Use in the United States: 2011 (2013) ......................................................................5

## INTRODUCTION

Providing hardly any support beyond TZAC's say-so, TZAC's opposition (Doc. 39 [Opp.]) advances peculiar and atextual interpretations of the New York False Claims Act, the New York tax regulations, and 26 U.S.C. § 501(c)(3). It also fails to grapple with the pleading defects NIF identified in its motion.

*First*, TZAC bases this lawsuit on information that was not "merely" posted on the internet, but that was instead disclosed in government reports and digital publications sharing the essential purpose and function of all other "news media." The New York False Claims Act's public disclosure bar thus prohibits TZAC from prosecuting this case. *Second*, TZAC's theory of tax fraud fails because NIF's New York tax exemption does not turn on NIF's exempt status under § 501(c)(3). *Finally*, TZAC's allegations fail to state a violation of New York's False Claims Act: most of the alleged grantee conduct is not attributable to NIF; any alleged conduct that is attributable to NIF does not constitute "electioneering"; and TZAC has not plausibly alleged that NIF *knowingly* misrepresented its activities. Each of these deficiencies independently justifies dismissal.

## ARGUMENT

### I. The Public Disclosure Bar Prohibits This Action.

As TZAC's opposition confirms, its allegations offer the New York authorities nothing beyond what they already could have learned through a search of the public domain. *See* Opp. 4 ("[A]ll the allegations concern transaction[s] that are on websites …."). And TZAC's attempt to nonetheless place its allegations beyond the reach of the New York public disclosure bar fails at every turn. As NIF's motion to dismiss explained, the bar extends to each and every one of the

1

internet publications that form the basis of TZAC's complaint. *See* Doc. 37 (Mot.) at 5–10. TZAC's arguments to the contrary suffer from multiple critical flaws:

*First*, TZAC overreads the textual differences between the federal public disclosure bar and its New York counterpart. To be sure, the New York legislature has expressly provided that "allegations or transactions are not 'publicly disclosed' in the 'news media' merely because information of allegations or transactions have been posted on the internet." N.Y. State Fin. Law § 190(9)(b)(iii). But that language does no more than codify the prevailing interpretation of the bar's federal counterpart. *See* Mot. 7–8; *see also U.S. ex rel. Radcliffe v. Purdue Pharma L.P.*, 582 F. Supp. 2d 766, 772 (W.D. Va. 2008) (rejecting the argument "that *anything* posted online would *automatically* constitute a public disclosure" (emphasis added)), *rev'd in part on other grounds*, 600 F.3d 319 (4th Cir. 2010). Without such express language in the federal bar, the federal courts have developed a functional approach to distinguishing between internet "news media" and information "merely … posted on the internet." *See, e.g., U.S. ex rel. Oliver v. Philip Morris USA, Inc.*, 101 F. Supp. 3d 111, 125 (D.D.C. 2015) (noting the distinction between webpages that are "available to the public" and intended "to give the public an accurate account" of new information and more obscure and suspect web resource like "anonymous blog posts and forum discussions"). The New York statute solidifies that framework by explicitly rejecting a blanket approach based merely on posting anywhere on the entire expanse of the internet.

Recognizing that the New York bar codifies the prevailing interpretation of the federal bar does not render the New York provision "extraneous," as TZAC contends. *See* Opp. 6. On the contrary, the New York amendment definitively answered what had been an open legal question that multiple federal courts had considered. *See Oliver*, 101 F. Supp. 3d at 124–25 (collecting cases). TZAC errs again by suggesting that NIF's position means that only "original sources" can

bring *qui tam* suits.  *See* Opp. 6.  If an action is not based on publicly disclosed information, the relator does not need to qualify as an original source.  And even where an action *is* based on publicly disclosed information, the relator may pursue it if the relator "has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions."  N.Y. State Fin. Law § 188(7)(b) (defining "original source").  TZAC does not even claim to meet this standard.  Correctly interpreted, New York's disclosure bar means only that internet-based news stories may not spawn opportunistic *qui tam* suits by entities like TZAC that offer the State nothing beyond what it already could have learned from publicly disclosed information.  *See* Mot. 5–6.

*Second*, and relatedly, TZAC offers no authority for its contrary reading of the public disclosure bar.  According to TZAC, only websites of "news organization[s]" count, but TZAC neither defines "news organization" nor explains why NIF does not qualify as one.  *See* Opp. 5.  Having contrived an exclusion of websites like NIF's, TZAC then contrives an exclusion of "social media accounts ... because [they are] used as an extension to, or even in some cases instead of, an organization's own website."  Opp. 6.  TZAC cites nothing to support these contentions about how "news media" should be interpreted; they are entirely made up.  More broadly, TZAC cites a post-enactment statement from a single Assemblyman, supported by a citation to a broken url, for the general proposition that the 2010 amendments were designed to make the New York False Claims Act stronger than the federal Act.  Opp. 3 & n.1.  But the 2010 amendments covered many issues in addition to specifying that mere posting on the internet does not trigger the public disclosure bar, and that highly generalized statement by an individual legislator provides no basis to adopt TZAC's novel and unsupported limitations on "news media."  In light of TZAC's complete failure to develop or justify its reading of the statute, this Court should apply the well-reasoned federal precedents explaining what internet publications constitute "news media."  *See* Mot. 6–10.  And

3

under those precedents, the publications at issue here are "news media" because they disseminate new information to an interested public audience. *See id.*

*Third*, TZAC cannot seriously deny that the information contained in NIF's Form 990s and grantmaking disclosures went to "the material elements of the 'allegations or transactions' on which the claim is based." *U.S. ex rel. Kirk v. Schindler Elevator Corp.*, 601 F.3d 94, 103 (2d Cir. 2010) (quoting 31 U.S.C. § 3730(e)(4)(A)), *rev'd on other grounds*, 563 U.S. 401 (2011). According to TZAC's opposition, "[t]he 990 tax returns … do not say anything substantial about the fraud." Opp. 4. Yet according to TZAC's complaint, the Form 990s contained the false certifications NIF supposedly used to defraud the government. *See* Doc. 30 (Am. Comp.) ¶¶ 8–22. Similarly, according to TZAC's opposition, the "grant information … does not trigger the public disclosure bar because knowing to which organizations NIF gives grants does not set the government on the trail of fraud." Opp. 5. Yet according to TZAC's complaint, the grants are what connects the Form 990 certifications to the alleged "electioneering," rendering the certifications "false." *See* Am. Compl. ¶¶ 21–23. The certifications and the grants thus go directly to the material elements of the alleged fraud—specifically, the making of *statements* to the government that were, allegedly, *false*. *See* Am. Compl. ¶¶ 35–37; N.Y. State Fin. Law § 189(g).

*Fourth*, TZAC's reliance on *U.S. ex rel. Yannacopolous v. General Dynamics*, 315 F. Supp. 2d 939 (N.D. Ill. 2004), is misplaced. Although *Yannacopolous* rejected a public disclosure argument based on foreign-language news reports, *see id.* at 949, that opinion's loose reasoning has no purchase here. Indeed, the Northern District of Illinois has itself called *Yannacopolous* into doubt, *see City of Chicago ex rel. Rosenberg v. Redflex Traffic Sys., Inc.*, No. 15 C 08271, 2016 WL 4203835, at *10 & n.10 (N.D. Ill. Aug. 8, 2016), and for good reason. The *Yannacopolous* court thought that the clear exclusion of foreign *government reports* from the public disclosure bar

4

counseled in favor of excluding foreign *media* as well. *See* 315 F. Supp. 2d at 949. But basic principles of statutory interpretation counsel just the opposite. *See United States v. Mason*, 692 F.3d 178, 182 (2d Cir. 2012) ("[T]he use of different words within the same statutory context strongly suggests that different meanings were intended." (quoting *United States v. Maria*, 186 F.3d 65, 71 (2d Cir. 1999)); *see also United States v. Yip*, 930 F.2d 142, 148 (2d Cir. 1991) ("[A] construction ascribing to two separate statutory provisions the same meaning and scope is disfavored.").

Moreover, the *Yannacopolous* court reasoned that the Greek publications at issue were not accessible to the American public, *see* 315 F. Supp. 2d at 949, which is clearly not the case here, *see* Doc. 38 (Decl. of J. Emmett Murphy) ¶¶ 45, 50 (providing the web addresses for the Hebrew-language disclosures); *cf. Radcliffe*, 582 F. Supp. 2d at 771 ("Given the international nature of the scientific community, there is no indication that the publication of this article in a foreign scientific journal makes it any less accessible to the American public than if it were published in a scientific journal located in the United States."). And while the *Yannacopolous* court thought it significant that few Americans understand Greek, *see* 315 F. Supp. 2d at 948, over 215,000 Americans understand Hebrew, *see* Camille Ryan, U.S. Census Bureau, U.S. Dep't of Comm., ACS-22, Language Use in the United States: 2011, at 3 (2013). This Court should not extend *Yannacopolous*'s nonbinding view of the law.

In any event, even if easily accessible internet publications written in Hebrew did not constitute public disclosures, it would make no difference in this case. The only "electioneering" allegation disclosed solely in Hebrew is the Adam Teva pledge to preserve trees. *See* Am. Compl. ¶ 30. And TZAC does not allege that NIF was involved in Adam Teva's alleged conduct or even that NIF gave Adam Teva a grant in the same year it created the tree pledge. *See id*. Because

5

TZAC cannot state a claim based on this "electioneering" allegation, the action should be dismissed regardless of whether the Court finds that this particular allegation was publicly disclosed. *See infra* at 8–9; Mot. 14–16.

## II. TZAC's Tax Fraud Theory Fails as a Matter of New York Law.

TZAC's attempt to defend its theory of New York tax fraud also fails. As NIF's motion explained, the New York tax regulation on which TZAC relies ties NIF's exemption to NIF's uncontested nonprofit status, not NIF's compliance with § 501(c)(3). Mot. 11–14. The New York Commissioner of Taxation and Finance has confirmed this view. NIF's alleged noncompliance with § 501(c)(3) is therefore immaterial. TZAC's effort to escape this conclusion distorts the plain language of the New York regulation and the Commissioner's authoritative interpretation of it.

TZAC insists that 20 N.Y.C.R.R. § 1-3.4(b)(6)(i)'s mention of a "presum[ption]" of taxability changes the substantive standard for tax exemption, so that NIF's New York exemption turns on its compliance with § 501(c)(3) rather than its nonprofit status. Opp. 7. But that is not what the regulation says, it is not how presumptions work, *see* Mot. 12–13, and the New York tax commissioner has recognized as much, *see* N.Y. Dep't Tax. & Fin., Opinion Letter on Pet. No. C100317A, 2010 WL 2721216, at *2 (Jun. 23, 2010) [hereinafter Opinion Letter].

TZAC claims that New York has "applied" the regulation in the way TZAC advocates, Opp. 7, but TZAC conspicuously fails to cite any authority to support that contention. Indeed, the only authority mentioned in this section of TZAC's opposition is the Commissioner's Opinion Letter, which held that a nonprofit was exempt under the plain language of the regulation TZAC relies on even though the nonprofit had never obtained a federal exemption and believed it did not qualify for one. *See* Mot. 13–14.

6

In TZAC's telling, the Opinion Letter's reference to State Form CT-247 proves that a nonprofit must meet federal standards for income-tax exemption in order to qualify for the New York tax exemption. *See* Opp. 8.  The Opinion Letter is clear and concise, and it says just the opposite: the Commissioner concluded that an organization that *has not* obtained a federal exemption and believes that it *cannot* meet any of the federal exemption requirements is *nonetheless* exempt under New York law because it is organized and operated on a nonprofit basis. *See* Opinion Letter at *2.  That is, after all, what 20 N.Y.C.R.R. § 1-3.4(b)(6) says on its face; while romanettes (i) and (ii) supply presumptions to aid in the application of the regulation's basic rule, they do not alter that basic rule. *See* Opinion Letter at *2.

The fact that the CT-247 form may indicate otherwise is irrelevant.  Although tax forms are intended to "directly reflect the provisions of the underlying laws and regulations," the "forms and instructions in themselves have no legal effect." 20 N.Y.C.R.R. § 2375.8(c).  By contrast, the applicable Opinion Letter represents the Commissioner's definitive "views … as to the application of law, regulations and other precedential material to the set of facts specified." *Id.* § 2376.4.[1] And the Court should not "embrace a regulatory construction that conflicts with the plain meaning of the promulgated language" anyway. *In re Visiting Nurse Serv. of N.Y. Home Care*, 840 N.E.2d

---

[1] TZAC's account of the Commissioner's reference to Form CT-247 is misleading.  According to TZAC, the Opinion Letter "explains" that a nonprofit without a federal exemption must "fill[] out a form in which it has to certify that it can be qualified as a federal tax-exempt organization." Opp. 8.  The Opinion Letter explains nothing of the sort.  While the Opinion Letter does refer to Form CT-247, it never mentions that form's language concerning whether the entity meets the federal exemption standards.  And, as explained in the text, the Opinion Letter concludes that the applicant is exempt under New York law even though it not only does not have a federal exemption, but does not believe it meets the standards for one.  Opinion Letter at *2 ("Petitioner contends that it does not fall under any of the Federal tax exempt provisions of § 501 of the Internal Revenue Code.").

577, 580 (N.Y. 2005). In this case, the language of 20 N.Y.C.R.R. § 1-3.4(b)(6) precludes TZAC's reading, and the Commissioner's authoritative construction of that regulation confirms as much.

Because any representation of compliance with § 501(c)(3)—whether made on the Form 990s, the CT-247, or elsewhere—would be immaterial to NIF's New York tax exemption, TZAC's theory of tax fraud fails as a matter of law. *See* Mot. 11–14.

### III. TZAC Has Failed to Plead that NIF Knowingly Violated § 501(c)(3).

Finally, TZAC's opposition confirms that it cannot attribute the grantee conduct at issue to NIF itself, nor has it raised a plausible inference that NIF knowingly misrepresented its compliance with federal tax law.

#### A. TZAC Has Failed to Attribute the Conduct of NIF's Grantees to NIF.

TZAC has not meaningfully addressed NIF's argument that the factual allegations do not connect NIF's grants to any "electioneering." Despite NIF's thorough briefing on this point in two separate motions, *see* Mot. 14–16; Doc. 28 at 14–16, TZAC continues to assume that anything an NIF grantee does is legally attributable to NIF. *See* Opp. 9 ("NIF … in some cases specifically gives money to organizations which electioneer."). That is not the law, as TZAC's lack of supporting authority confirms: if an NIF grantee engaged in electioneering without using NIF's grant money, that electioneering by the grantee would be irrelevant to NIF's federal tax-exempt status. The IRS has long made clear that a § 501(c)(3) organization does not "jeopardize its exemption …, even though it distributes funds to nonexempt organizations … provided it retains control and discretion over use of the funds for [exempt] purposes." Rev. Rul. 68-489, 1968-2 C.B. 210 (1968); *see also* IRS Info. Ltrs., 2019 WL 3048649 (June 28, 2019) (explaining the continuing force of Rev. Rul. 68-489). Thus, so long as NIF "controls [its] disbursement[s] and ensures that [they are] applied to exempt purposes," it does not bear responsibility for the

8

independent actions of its grantees. *Nat'l Found., Inc. v. United States*, 13 Cl. Ct. 486, 493 (1987), *as amended* (Nov. 10, 1987).

TZAC's complete failure to plead any connection—even in conclusory terms—between the NIF grants it identifies and the "electioneering" it alleges defeats any theory that NIF "electioneer[ed] … 'indirect[ly]'" through its grantees. Opp. 10; *see* Mot. 14–16.

### B. TZAC Has Failed to Plead that NIF "Knowingly" Misrepresented Its Compliance with § 501(c)(3).

In addition, TZAC has not explained how the allegations in the complaint describe knowing misrepresentations of compliance with § 501(c)(3).

In fact, TZAC does not even address NIF's argument that no precedent warned NIF that the advocacy alleged in the complaint would jeopardize its tax exemption. *Compare* Mot. 17–19 *with* Opp. 10–13. Although TZAC attempts to distinguish the precedents supporting NIF's view of where the line is drawn between permissible issue advocacy and prohibited electioneering, TZAC again fails to offer a single case or IRS publication adopting TZAC's contrary view. *See* Opp. 10–13. In the absence of such guidance, NIF's reasonable, well-supported view of what the law *permits* prevents TZAC from showing that NIF knew or had strong reason to believe that it was engaged in *prohibited* conduct. *See* Mot. 18 (citing *U.S. ex rel. Purcell v. MWI Corp.*, 807 F.3d 281 (D.C. Cir. 2015), among other authorities).

In lieu of argument and authority, TZAC simply declares that it was so clear that certain alleged grantee conduct "falls under the most clear-cut definition" of electioneering that the absence of precedent does not matter. Opp. 10. But TZAC's ipse dixit is no substitute for authority, or even analysis. Moreover, in relying on what it touts as the most "clear-cut" allegation of "electioneering"—the Council for Peace and Security's opposition of Benjamin Netanyahu in

9

the 2015 elections—TZAC ignores the fact that it has not alleged any factual basis for attributing that conduct to NIF. *See* Am. Compl. ¶¶ 33–34; Mot. 14–16; *supra* at 8–9. It is not enough for TZAC to assert that an NIF grantee supported or opposed political candidates. In order for NIF's representations of compliance with § 501(c)(3) to be knowingly false, TZAC must allege—both plausibly and with particularity—that NIF funded or supported conduct that it knew or had strong reason to believe was partisan political activity rather than issue advocacy. *See* Mot. 16–19. TZAC's failure to do so provides the Court yet another reason to dismiss this case.

## CONCLUSION

For the foregoing reasons as well as those stated in NIF's motion, the Court should dismiss this action with prejudice.

Dated: September 21, 2020

    Respectfully submitted.

    /s/  *Jeffrey S. Bucholtz*

| | |
|---|---|
| Jeffrey S. Bucholtz, *Pro Hac Vice* | Brian Hauss |
| Gabriel Krimm, *Pro Hac Vice* | Arianna Demas |
| KING & SPALDING LLP | AMERICAN CIVIL LIBERTIES |
| 1700 Pennsylvania Ave., NW | UNION FOUNDATION |
| Washington, DC 20006 | 125 Broad St., 18th Floor |
| Tel: 202-626-2907 | New York, NY 10004 |
| Fax: 202-626-3737 | Tel: (212) 549-2604 |
| jbucholtz@kslaw.com | Fax: (212) 549-2649 |
| gkrimm@kslaw.com | bhauss@aclu.org |
| | ademas@aclu.org |

J. Emmett Murphy
KING & SPALDING LLP
1185 Avenue of the Americas
New York, NY 10036
Tel: (212) 556-2100
Fax: (212) 556-2222
jemurphy@kslaw.com

*Counsel for Defendant New Israel Fund*