UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STATE OF NEW YORK *ex rel.* TZAC, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>NEW ISRAEL FUND,<br><br>    Defendant. | No. 1:20-cv-2955-GHW |

**STATE OF NEW YORK'S STATEMENT OF INTEREST**

                LETITIA JAMES
                Attorney General of the State of New York
                28 Liberty Street
                New York, New York 10005

                Bryan P. Kessler
                Senior Counsel
                Taxpayer Protection Bureau
                (212) 416-8736
                bryan.kessler@ag.ny.gov

The State of New York respectfully submits this statement of interest in response to the Court's December 28th request for briefing (Dkt. 43).

Unlike the federal False Claims Act, the New York False Claims Act ("NYFCA") has placed an express limit on what counts as "news media" for purposes of the public disclosure bar: an allegation or transaction is not publicly disclosed in the news media "merely because information of allegations or transactions have been posted on the internet or on a computer network." N.Y. State Finance Law § 190(9)(b)(iii). This limit not only forecloses any argument that would result in all publicly available online information being deemed to have been publicly disclosed "in the news media", but it also highlights that the "news media" is a distinct source that is not intended to cover any and all public dissemination of information. Thus, in determining whether an allegation or transaction was disclosed in the "news media" for purposes of the NYFCA's public disclosure bar, the Court should focus on whether the source of the disclosure is "news media" within the plain meaning of that term, and should look for guidance to the federal cases that most faithfully attempt to determine and apply the plain meaning of "news media."

The State expresses no view on how this legal standard should be applied to the facts alleged in this case, or on any of the other issues raised in the motion to dismiss briefing.

**Background on the 2010 Amendment to the NYFCA**

Since 1986, the federal False Claims Act has contained provisions requiring the dismissal of *qui tam* actions based on allegations or transactions that have already been publicly disclosed in certain specified sources, unless the relator is an original source of the information or (in recent years) unless the Attorney General objects to the dismissal. *See* 31 U.S.C. § 3730(e)(4).

1

Although these provisions are widely-referred to as the "public disclosure bar," not every public disclosure can bar a *qui tam* action. "By its plain terms, the public disclosure bar applies to some methods of public disclosure and not to others," *Schindler Elevator Corp. v. U.S. ex rel. Kirk*, 563 U.S. 401, 414 (2011), and public disclosures that are not through the sources specified in the statute are of no consequence. One of the sources specified in the federal False Claims Act is the "news media," although that term is not defined.

When New York enacted NYFCA in 2007, it followed the federal model and included substantially identical public disclosure bar provisions. In so doing, New York intended that the federal caselaw interpreting the federal False Claims Act would provide guidance in interpreting the NYFCA. As a New York State Senate sponsor's memorandum supporting enactment of the NYFCA stated, the "large body of case law interpreting the federal law provisions…is intended to be used for guidance in interpreting similar provisions under New York State law." Senate Introducer Mem. in Support, 2007 S.B. 3895. *See also State ex rel. Seiden v. Utica First Ins. Co.*, 943 N.Y.S.2d 36, 39 (1st Dept. 2012) (to the extent the NYFCA follows the federal FCA, "it is appropriate to look toward federal law when interpreting the New York act").

In the years immediately following the enactment of the NYFCA, defendants in federal False Claims Act cases argued that allegations or transactions that had been disclosed on the internet were public disclosures in the "news media" that could bar a *qui tam* action, with varying results. In *U.S. ex rel. Unite Here v. Cintas Corp.*, No. C 06-2413 PJH, 2007 WL 4557788, at *12 (N.D. Cal. Dec. 21, 2007), the defendant argued that the transactions at issue had been publicly disclosed in the news media because "the fact that it enters into contracts with various

agencies of the United States government and the type and amount of those contracts are matters known…to any number of interested members of the public with access to the Internet." And the court agreed, holding that "[t]he 'fact' of the contracts between Cintas and the federal government was publicly disclosed in the news media, as that information was available on the Internet." *Id.* at *14. Shortly thereafter, another court, citing *Cintas* for the proposition that the "internet can qualify as 'news media,'" *U.S. ex rel. Brown v. Walt Disney World Co.*, No. 606-CV1943-ORL-22KRS, 2008 WL 2561975, at *4 n.7 (M.D. Fla. June 24, 2008) (citation omitted), held that information disclosed on the Wikipedia website had been publicly disclosed in the news media. And in a third case, a drug manufacturer argued that a *qui tam* action against it should be dismissed because the package insert for the drug at issue "is available on Purdue's publicly-accessible web site," and "publication on the Internet constitutes a public disclosure" in the news media. *U.S. ex rel. Radcliffe v. Purdue Pharma, L.P.*, 582 F. Supp. 2d 766, 771 (W.D. Va. 2008). Although the *Radcliffe* court was "not ready to conclude that anything posted online would automatically constitute a public disclosure," it nevertheless held that the package insert had been publicly disclosed in the news media because it was "posted on a web page entitled 'News & What's New' and because other items on the page resemble press releases." *Id*.

In addition to the uncertainty about whether federal courts would deem information that was publicly disseminated on the internet to have been publicly disclosed in the news media, in April 2010 a New York state court broadly—and in the State's view, erroneously—interpreted the NYFCA's public disclosure bar as requiring the dismissal of any *qui tam* action "based upon information that is in the public domain…that would have been equally available

3

to strangers to the alleged fraud transactions had they chosen to look for it as it was to the relators." *State v. Unitedhealth Grp., Inc.*, No. 102740/2008, 2010 WL 11432977, at *5 (N.Y. Sup. Ct. Apr. 07, 2010) (citation and quotations omitted), *aff'd sub nom. State ex rel. Jamaica Hosp. Med. Ctr., Inc. v. UnitedHealth Grp., Inc.*, 922 N.Y.S.2d 342 (1st Dep't 2011).[1] *Unitedhealth* ignored the NYFCA's express language that only public disclosures through specified sources could bar a *qui tam* action, and its holding that "publicly available information set forth [on] an internet website" counted as a public disclosure sufficient to bar a *qui tam* action threatened to greatly expand the NYFCA's public disclosure bar. *Id*. at *4.

So later in 2010, in order to "address[] several issues that have arisen in the courts since the enactment of" the NYFCA, including to make clear that "mere posting on the internet of information concerning allegations or transactions does not constitute such 'public disclosure,'" Sponsors Mem., 2010 A.B. 11568, New York amended N.Y. State Finance Law § 190(9)(b)(iii) to its current language: a court shall dismiss a *qui tam* action "if substantially the same allegations or transactions as alleged in the action were publicly disclosed…in the news media, provided that such allegations or transactions are not 'publicly disclosed' in the 'news media' merely because information of allegations or transactions have been posted on the internet or on a computer network."

This amendment forecloses any argument—such as those adopted in *Cintas*, *Walt Disney World*, and *Unitedhealth*—that would result in all publicly available online information being deemed to have been publicly disclosed "in the news media." And because many federal courts

---

[1] The First Department's seven-sentence-long opinion contains essentially no analysis of these issues.

since 2010 have followed the path blazed by *Cintas* and *Walt Disney World*,[2] this amendment makes clear that the federal precedents that have adopted those arguments are not persuasive authority regarding the meaning of the NYFCA.

The 2010 amendment also emphasizes—contra *Unitedhealth*—that the "news media" is a discrete source that is not intended to cover all public dissemination of information. This emphasis is hardly redundant. Although the Supreme Court has plainly stated that "the public disclosure bar applies to some methods of public disclosure and not to others," *Schindler Elevator*, at 414, many of the federal courts that have held that "news media" broadly extends to information from online sources have interpreted "news media" to "encompass information from a broad swath of online sources without pausing to consider whether those sources could reasonably be defined as 'news media' within any ordinary meaning of the term." *U.S. ex rel. Integra Med Analytics LLC v. Providence Health & Servs.*, No. CV 17-1694 PSG, 2019 WL 3282619, at *13 (C.D. Cal. July 16, 2019), *motion to certify appeal granted*, 2019 WL 6973547 (C.D. Cal. Oct. 8, 2019) (citations and quotations omitted) ("*Integra*").[3] But since 2010, the NYFCA has been explicit that public dissemination of information—without more—is not sufficient to count as a public disclosure.

---

[2] *See, e.g.*, *U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 813 (11th Cir. 2015) (holding that "the clinics' publicly available websites, which are intended to disseminate information about the clinics' programs, qualify as news media for purposes of the public disclosure provision"); *U.S. ex rel. Hong v. Newport Sensors, Inc.*, No. SACV-13-1164-JLS, 2016 WL 8929246, at *5 (C.D. Cal. May 19, 2016) ("Information publicly available on the Internet generally qualifies as 'news media.'"); *U.S. v. Honeywell Int'l, Inc.*, No. LA-CV-12-02214-JAK, 2013 WL 12122693, at *9 (C.D. Cal. Nov. 8, 2013) ("Documents that are publicly available on the internet generally qualify as 'publicly disclosed' documents under 31 U.S.C. § 3730(e)(4).").

[3] The question certified for appeal is "Whether all online information is disclosed from the "news media" such that it would fall under the public disclosure bar of the False Claims Act?" The answer under the NYFCA is clearly no; thus, the pending appeal in *Integra* does little to detract from its persuasive value as guidance for interpreting the NYFCA.

**Scope of the NYFCA's News Media Provision**

In determining whether an allegation or transaction was disclosed in the "news media" for purposes of the NYFCA's public disclosure bar, the Court should focus on whether the source of the disclosure is "news media" within the plain meaning of that term, and should rely on the federal cases that most faithfully attempt to determine and apply the plain meaning of "news media."

Under New York law, "the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof." *Nat'l Fuel Gas Supply Corp. v. Schueckler*, 35 N.Y.3d 297, 307 (N.Y. 2020) (citations and quotations omitted). Therefore, the most persuasive federal cases interpreting the federal False Claims Act are those that focus on giving effect to the plain meaning of the term "news media." *Integra* is such a case.[4] There, following supplemental briefing on this specific issue, the court engaged in a detailed and thoughtful analysis of the ordinary meaning of the term "news media." *Integra*, at *9-16. The court acknowledged that because "the line between what is and is not considered news media has become increasingly blurred, attempting to set forth a single conclusive definition of the term may be an impossible task," but it nevertheless identified five factors that provide "useful guideposts in determining whether information from an online source has been disclosed 'from the news media.'" *Integra*, at *14-15. Those five factors are: (1) "the extent to which the information typically conveyed by a source would be considered newsworthy"; (2) the extent to which there is "editorial independence, or at least some separation, between the original source

---

[4] *See also Silbersher v. Allergan Inc.*, No. 18-CV-03018 JCS, 2020 WL 7319407, at *24 (N.D. Cal. Dec. 11, 2020) (stating its "agree[ment] with the approach set forth in *Integra*").

6

of information and the medium that conveys it"; (3) the extent to which the source intends "to disseminate information widely, as opposed to only to a few individuals"; (4) the extent to which "an online source functions like one of the[] traditional outlets" [i.e., a newspaper, radio, or television station]; and (5) the extent to which the source "could reasonably be described as 'news media' as at least some people would that term in everyday speech." *Id*. A framework like that set forth in *Integra* provides sufficient flexibility to capture the wide variety of news media sources available online, while still remaining tethered to the text of the NYFCA.[5]

By contrast, the standards advanced by Defendant and Relator are not persuasive because they are largely untethered from the statutory text. Defendant's standard—that a public website that "inform[s] the public on recent events and previously unknown facts," Dkt. 37 at 8, and is "intended to give the public an accurate account," Dkt. 40 at 2, should be deemed "news media"—is much broader than the plain meaning of "news media". In its reply, Dkt. 40 at 2, Defendant derives its standard in large part from *U.S. ex rel. Oliver v. Philip Morris USA, Inc.*, 101 F. Supp. 3d 111 (D.D.C. 2015) ("*Oliver*"), where the court (citing to *Walt Disney World*, among other cases) held that a page on the website of the Army and Air Force Exchange Service titled "Terms & Conditions (for Expense, Supplies and Equipment Purchased by AAFES)" was "news

---

[5] Although the NYFCA does not define "news media," that term is defined in other New York statutes. While definitions tailored to other contexts provide only limited interpretative guidance here, the State notes that the multi-factor framework set forth in *Integra* is generally consistent with those definitions. For example, New York Judiciary Law § 218, which governs audio-visual coverage of court proceedings, defines "news media" as

> "any news reporting or news gathering agency and any employee or agent associated with such agency, including television, radio, radio and television networks, news services, newspapers, magazines, trade papers, in-house publications, professional journals or any other news reporting or news gathering agency, the function of which is to inform the public, or some segment thereof."

N.Y. Judiciary Law § 218(2)(c). Similarly, New York's reporter's privilege statute, N.Y. Civil Rights Law § 79-h, refers to newspapers, magazines, news agencies, press associations, wires services, professional journalists, and newscasters as news media.

media" because the purpose of the page "was clearly to give the public an accurate account of [the relevant] contracting requirements." *Id*. at 125. But this conclusion is at odds with the plain meaning of "news media." As *Integra* pointed out in rejecting the *Oliver* approach, "[a] person might go to a restaurant's website to look at its menu. Or the Dodgers' website to find out the ticket prices for the upcoming series." *Integra*, at *11. Or, as in *Oliver*, a person might go to the Terms and Conditions page on the AAFES website to learn about the relevant contracting requirements. But even though the information conveyed on those websites meets Defendant's proposed standard because it is publicly available, intended to be accurate, and informs the public of previously unknown facts, "[i]n none of these circumstances would it be natural, or really conceivable, to say that the information had been learned by consulting the news media." *Id*.

Nor can Defendant's standard be squared with the 2010 amendment to the NYFCA. If the Terms and Conditions for a retailer's website were only available in hard copy at a brick-and-mortar check-out counter, no one would consider that information to have been disclosed in the "news media." But in *Oliver*, the primary case cited in Defendant's reply brief, that exact same information was held to have been disclosed in the "news media" solely because it was available on the internet. Defendant's standard would thus effectively nullify the NYFCA's prohibition on finding that information has been publicly disclosed in the news media "merely because…[it was] posted on the internet or on a computer network."

Relator's standard—that a "company's website is not news media, except when the company is itself a news organization," Dkt. 39 at 5—is also unpersuasive, since it is either circular (if "news organization"="news media") or at odds with the statutory language (if

8

"news organization"≠"news media"), and because the narrow focus on "news organization[s]" forecloses non-traditional sources, like blogs, from being deemed "news media," even though that may be appropriate in certain circumstances. And Relator's focus on whether a source has "claimed to be a news organization," *id*., places unwarranted emphasis on an online source's subjective self-description.

## CONCLUSION

The additional language in the NYFCA's public disclosure bar forecloses any argument that would result in all publicly available online information being deemed to have been publicly disclosed "in the news media", and highlights that the "news media" is a distinct source that is not intended to cover any and all public dissemination of information. Thus, in determining whether an allegation or transaction was disclosed in the "news media", the Court should focus on whether the source of the disclosure is "news media" within the plain meaning of that term, and the Court should look for guidance to the federal precedent—like *Integra*—that gives effect to the plain meaning of "news media."

Dated: New York, New York
January 11, 2021

                                          Respectfully submitted,

                                          LETITIA JAMES
                                          Attorney General for the State of New York

By:    /s/ Bryan P. Kessler
          Bryan P. Kessler