**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STATE OF NEW YORK *ex rel.* TZAC, INC. | |
| Plaintiff-Relator, | |
| v. | **No. 1:20-cv-2955-GHW** |
| NEW ISRAEL FUND, | |
| Defendant. | |

**RESPONSE TO THE STATE OF NEW YORK'S**
**STATEMENT OF INTEREST**

Jeffrey S. Bucholtz, *Pro Hac Vice*
Gabriel Krimm, *Pro Hac Vice*
KING & SPALDING LLP
1700 Pennsylvania Ave., NW
Washington, DC 20006
Tel: (202) 626-2907
Fax: (202) 626-3737
jbucholtz@kslaw.com
gkrimm@kslaw.com

J. Emmett Murphy
KING & SPALDING LLP
1185 Avenue of the Americas
New York, NY 10036
Tel: (212) 556-2100
Fax: (212) 556-2222
jemurphy@kslaw.com

Brian Hauss
Arianna Demas
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
Tel: (212) 549-2604
Fax: (212) 549-2649
bhauss@aclu.org
ademas@aclu.org

*Counsel for Defendant New Israel Fund*

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 1

I.   The New York False Claims Act clearly specifies that not everything on the internet
     counts as "news media." .......................................................................................... 1

II.  NIF's interpretation of the statute is consistent with its ordinary meaning. ........................ 3

III. The State's interpretation favors NIF's motion to dismiss. .................................................. 5

CONCLUSION ................................................................................................................... 7

## INTRODUCTION

The State of New York's statement of interest counsels in favor of dismissal under the public disclosure bar.  The State and NIF agree that the statutory text explicitly rejects the conclusion, endorsed by a few courts, that anything and everything posted on the internet qualifies as disclosed in the "news media."  The State and NIF likewise agree that the Court must apply the public disclosure bar to internet publications in a manner consistent with the ordinary meaning of "news media."  For this very reason, NIF advanced an interpretation that looks to the function and purpose of a given internet publication and asks whether it aims to broadcast news and commentary to a public audience interested in that news and commentary.  If there is any daylight between that interpretation and the State's reading, it makes no difference in this case.  This case is not about restaurant menus — it is about well-publicized advocacy on pressing matters of public concern.  Under any valid reading of the public disclosure bar, it bars this lawsuit.

## ARGUMENT

### I.    The New York False Claims Act clearly specifies that not everything on the internet counts as "news media."

The State stresses that New York's public disclosure bar differs from its federal counterpart in one material way: it "place[s] an express limit on what counts as 'news media' … foreclos[ing] any argument that would result in all publicly available online information being deemed to have been publicly disclosed 'in the news media.'"  Doc. 45 (Stmt.) at 1.  NIF agrees.

In the State's words, "not every public disclosure can bar a *qui tam* action."  *Id.* at 2.  The federal False Claims Act specifies discrete categories of disclosure that trigger the bar.  *See id.* at 1–2; 31 U.S.C. § 3730(e)(4)(A).  And the federal courts have honored that enumeration, applying those categories according to their "ordinary meaning" in service of the bar's purpose of preventing

1

suits by "strangers" to an alleged fraud whose "help" the government does not need.  *See U.S. ex rel. Alcohol Found., Inc. v. Kalmanovitz Charitable Found., Inc.*, 186 F. Supp. 2d 458, 463 (S.D.N.Y. 2002).  New York incorporated that body of case law into its own, "substantially identical," public disclosure bar when it enacted the New York False Claims Act in 2007. *See* Stmt. at 2.

Then, in 2010, the New York legislature amended the public disclosure bar to settle a question percolating through the courts: does the entire internet count as "news media"?  *See id.* at 2, 4. In the years immediately prior, several defendants had argued — with varying degrees of success — that the "news media" label applied to the internet generally.  *See id.* at 2–4; *see also* Doc. 37 (NIF Mot.) at 7–8 (discussing the development of the case law); Doc. 40 (NIF Reply) at 2 (same).[1]  The legislature foreclosed that argument, altering the statute to expressly dictate that a disclosure is not "in the 'news media' *merely* because … [it] ha[s] been posted on the internet." N.Y. State Fin. Law § 190(9)(b)(iii) (emphasis added).

The result of the amendment was to retain the ordinary meaning of "news media" and reject the idea that *all* internet postings fit within that term.  *See* Stmt. at 5–6.  Put differently, just because the internet can make information available to the public does not necessarily mean that such

---

[1] Although the State reads *U.S. ex rel. Brown v. Walt Disney World Co.*, No. 6:06-cv-1943-Orl-22KRS, 2008 WL 2561975 (M.D. Fla. June 24, 2008), as adopting this argument, that is not correct.  The *Walt Disney* court applied the bar to allegations that had been reported in the traditional press as well as on Wikipedia. *Id.* at *4–5.  Amid its discussion, the court dropped a footnote stating that "the internet *can* qualify as 'news media'" — a far cry from concluding that everything published on the internet is, as such, necessarily disclosed in the news media. *Id.* at *4 n.7 (emphasis added).

information has been "'publicly disclosed' in the 'news media.'"   N.Y. State Fin. Law § 190(9)(b)(iii).  That is what the statute says and what both the State and NIF read it to say.

## II.    NIF's interpretation of the statute is consistent with its ordinary meaning.

Consistent with the text and history of the statute, the State urges this Court to "focus on whether the source of [an internet publication] is 'news media' within the plain meaning of that term." Stmt. at 1.  That is what NIF has argued for in the briefs supporting its motion.

Relying in substantial part on this Court's own pre-2007 precedent applying the "ordinary meaning" of "news media" to *print*, NIF explained that the bar applies to "electronic publications that periodically make new information 'generally accessible to the public.'"  Mot. at 7 (quoting *Alcohol Found.*, 186 F. Supp. 2d at 463); *see also id.* at 7–10 (citing *Alcohol Found.* throughout). In other words, the "news" component of the term "news media" limits "the bar to internet publications that share the function and purpose of traditional news outlets: informing the public on recent events and previously unknown facts."  *Id.* at 7 (citing *U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 813 (11th Cir. 2015),[2] and *U.S. ex rel. Kraxberger v. Kansas City Power & Light Co.*, 756 F.3d 1075, 1079 (8th Cir. 2014)); *cf. U.S. ex rel. Integra Med Analytics LLC v. Providence Health & Servs.*, No. CV 17-1694 PSG (SSx), 2019 WL 3282619, at *11 (C.D. Cal.

---

[2] The State is wrong to suggest that *Osheroff* applied the bar to internet publications across the board.  *See* Stmt. at 5 & n.2.  *Osheroff* held that a website qualified as "news media" not merely because it was on the internet but because it was "intended to disseminate information about [health] clinics' programs."  *Id.* (quoting *Osheroff*, 776 F.3d at 813).  Indeed, the court based its conclusion on a comparison between the website at issue and similar content published in the *Miami Herald*.  *See Osheroff*, 776 F.3d at 813.

July 16, 2019), *appeal pending*, No. 19-56367 (9th Cir.) (discussing the dictionary definitions of "news" and "media").[3]

To be sure, that interpretation does sweep in many internet publications reporting information that may not be reported by the traditional press. *Cf., e.g.*, *Kraxberger*, 756 F.3d at 1079 ("[T]he PSC functions as a news organization for public utilities and consumers in Missouri … reporting news and promotions related to public utilities[]."). But that is only because the internet has dramatically reduced the cost of publishing news and commentary, leading to a proliferation of nontraditional news outlets. Indeed, the State does not and cannot deny that millions of Americans get at least *some* of their news from social media platforms like Twitter and Facebook. *See* A.W. Geiger, *Key Findings About the Online News Landscape in America*, PewResearch.org (Sept. 11, 2019) (reporting that "[m]ore Americans get news on social media than from print newspapers"). And nothing in the language of the law would allow courts to distinguish one electronic publication from another based on the type of news that it covered or the size of its readership. *See Alcohol Found.*, 186 F. Supp. 2d at 463.

In sum, although the advent of the internet has not changed the definition of "news media," it has increased the breadth and amount of news reporting available to the public. In so doing, it has increased the likelihood that "strangers to … fraud" will file *qui tam* suits based on second-

---

[3] The State overstates NIF's reliance on *U.S. ex rel. Oliver v. Philip Morris USA, Inc.*, 101 F. Supp. 3d 111 (D.D.C. 2015). *See* Stmt. at 7–8. NIF cited *Oliver* in its reply principally to illustrate the debate among federal courts regarding internet publications and the consensus view that internet publications *can* qualify as "news media" depending on their function and purpose. *See* Reply at 2; *Oliver*, 101 F. Supp. 3d at 124–25. To the extent that the information published in *Oliver* was not sufficiently "newsworthy," *see* Stmt. at 6–8, that fact has no bearing on this case given the highly distinguishable publications at issue here, *see infra* at 6.

hand allegations.  *Id.*   To prevent such suits from proceeding, courts must apply the public

disclosure bar to internet publications that fit the ordinary meaning of "news media" because of

their function and purpose.

**III.    The State's interpretation favors NIF's motion to dismiss.**

Despite the similarities between the State's approach and NIF's approach, the State asserts

that "the standard[] advanced by [NIF] … [is] largely untethered from the statutory text."  Stmt. at

7.  It then urges this Court to follow the five-factor framework laid out in *U.S. ex rel. Integra Med*

*Analytics LLC v. Providence Health & Servs.*, 2019 WL 3282619.  *See* Stmt. at 6.  Applying that

framework for the sake of argument, NIF's motion should still be granted.

According to *Integra*, courts determining whether a web publication constitutes "news

media" should consider five factors.  *First,* "the extent to which the information typically conveyed

by a source would be considered newsworthy is relevant to whether it is a news media source."

2019 WL 3282619, at *14.[4]  *Second*, courts should consider the extent to which a web platform

"curates information" from outside sources, rather than "simply publish[ing] information about

itself."  *Id.  Third*, "a source's intent to disseminate information widely, as opposed to only a few

individuals, is relevant."  *Id.* at *14.  *Fourth*, courts should consider whether the source "functions

like [a] traditional [press] outlet[]," including "the extent to which the conveyance of newsworthy

information is the primary purpose of the entity … or whether the dissemination of such

information is merely ancillary to some other purpose."  *Id.* at *15.  *Fifth*, and most importantly,

---

[4] Even traditional press outlets now take a broad view of what is "newsworthy."  For example, countless "news"-focused organizations now publish stories about how ordinary people react to events on Twitter.  *See, e.g.*, Michael Hollan, *Twitter Reacts to Airbnb's Unexpected Move Ahead of the Inauguration*, Fox News (Jan. 13, 2021), https://www.foxnews.com/travel/twitter-users-react-airbnb-canceling-reservations-d-c-inaguration.

courts should consider whether the source "could reasonably be described as 'news media' as at least some people would [use] that term in everyday speech." *Id.*

These factors — which are neither dispositive nor exclusive, *see id.* — run in NIF's favor. Much of the information in the complaint was published by traditional press outlets like *Haaretz* and *JPost*, *see* Mot. at 10, as well as watchdog organizations dedicated to gathering, analyzing, and broadly distributing news about nonprofits, *see id.* at 8–9. The *Integra* test is derived from the typical characteristics of the traditional press, so those sources pass the test without controversy. *See Integra*, 2019 WL 3282619, at *14–15. As for the websites and social media accounts of NIF and its grantees, those sources likewise qualify as "news media" under the *Integra* framework because of their content, audience, and function. This case does not concern restaurants posting their menus or baseball teams posting their ticket prices, *see id.* at *11, but rather organizations engaged in advocacy on political and social issues discussing their own and each other's involvement with those issues. *See* Mot. at 9–10 (citing and discussing Exs. F1–F12). As TZAC's complaint shows, the websites and social media accounts at issue (1) frequently report on events considered "newsworthy" by the traditional press; (2) curate information to fit the interests of their audience; (3) disseminate that information to thousands of interested followers and donors; (4) highlight these events as part of their primary, civic-focused missions; and (5) could be referred to as part of the "news media" in everyday speech for all of the reasons just stated. *See id.*; Doc. 30 (Am. Compl.) ¶ 32 ("[T]hese grantees proudly post on their websites what they have been doing …."); *id*. ¶¶ 23–34; Mot. Exs. F1–F12. Under any reasonable application of the *Integra* test, these web-based publishing platforms qualify as "news media."

Finally, the State correctly observes that TZAC has not furnished the Court with a viable standard. *See* Stmt. at 8–9 (explaining that TZAC's effort to limit the bar to "news organization[s]" — a term TZAC has not attempted to define — is either "circular" or incorrect).

## CONCLUSION

For the reasons set forth in NIF's motion and reply and reinforced by the State's statement of interest, the Court should conclude that the public disclosure bar prohibits TZAC from proceeding with this action.

Dated: January 19, 2021

       Respectfully submitted.

       /s/  *Jeffrey S. Bucholtz*

Jeffrey S. Bucholtz, *Pro Hac Vice*          Brian Hauss
Gabriel Krimm, *Pro Hac Vice*                Arianna Demas
KING & SPALDING LLP                          AMERICAN CIVIL LIBERTIES
1700 Pennsylvania Ave., NW                   UNION FOUNDATION
Washington, DC 20006                         125 Broad St., 18th Floor
Tel: (202) 626-2907                          New York, NY 10004
Fax: (202) 626-3737                          Tel: (212) 549-2604
jbucholtz@kslaw.com                          Fax: (212) 549-2649
gkrimm@kslaw.com                             bhauss@aclu.org
                                             ademas@aclu.org

J. Emmett Murphy
KING & SPALDING LLP
1185 Avenue of the Americas
New York, NY 10036
Tel: (212) 556-2100
Fax: (212) 556-2222
jemurphy@kslaw.com

       *Counsel for Defendant New Israel Fund*

7