**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STATE OF NEW YORK *ex rel.* TZAC, INC.<br><br>                              Plaintiff-Relator,<br><br>        v.<br><br>NEW ISRAEL FUND,<br><br>                              Defendant. | **No. 1:20-cv-2955-GHW** |

**NIF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION
TO CERTIFY THE COURT'S FEBRUARY 16 OPINION & ORDER
FOR INTERLOCUTORY APPEAL**

Jeffrey S. Bucholtz, *Pro Hac Vice*
Gabriel Krimm, *Pro Hac Vice*
KING & SPALDING LLP
1700 Pennsylvania Ave., NW
Washington, DC 20006
Tel: (202) 626-2907
Fax: (202) 626-3737
jbucholtz@kslaw.com
gkrimm@kslaw.com

J. Emmett Murphy
KING & SPALDING LLP
1185 Avenue of the Americas
New York, NY 10036
Tel: (212) 556-2100
Fax: (212) 556-2222
jemurphy@kslaw.com

Brian Hauss
Arianna Demas
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
Tel: (212) 549-2604
Fax: (212) 549-2649
bhauss@aclu.org
ademas@aclu.org

*Counsel for Defendant New Israel Fund*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................. 2

I.   Whether TZAC has sufficiently pleaded attribution of NIF's grantees'
     alleged conduct to NIF for purposes of 26 U.S.C. § 501(c)(3) is a controlling
     question of law ........................................................................................................ 3

II.  There is substantial ground for difference of opinion about the Court's
     conclusion .............................................................................................................. 4

III. Immediate appeal would advance the ultimate termination of this litigation
     and promote the public interest ............................................................................... 8

CONCLUSION ............................................................................................................ 11

# TABLE OF AUTHORITIES

## Cases

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007)...................................................................................................2

*Balintulo v. Daimler AG*,
   727 F.3d 174 (2d Cir. 2013)................................................................................................2

*Beeman v. Anthem Prescription Mgmt., Inc.*,
   No. EDCV 04-407-VAP (SGLx),
   2007 WL 8433884 (C.D. Cal. Aug. 2, 2007)......................................................................9

*Fed. Hous. Fin. Agency v. UBS Americas, Inc.*,
   858 F. Supp. 2d 306 (S.D.N.Y. 2012)................................................................................9

*German v. Fed. Home Loan Mortg. Corp.*,
   No. 93 CIV. 6941 NRB, 2000 WL 1006521 (S.D.N.Y. July 19, 2000) ...............................8

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-*
   *Gestione Motonave Achille Lauro in Amministrazione Straordinaria*,
   921 F.2d 21 (2d Cir. 1990)...........................................................................................4, 8

*Koehler v. Bank of Bermuda Ltd.*,
   101 F.3d 863 (2d Cir. 1996)..............................................................................................10

*Mohawk Indus., Inc. v. Carpenter*,
   558 U.S. 100 (2009)............................................................................................................2

*Pearson Educ., Inc. v. Liu*,
   No. 1:08-CV-06152-RJH, 2010 WL 623470 (S.D.N.Y. Feb. 22, 2010) ...............................9

*Pen Am. Ctr., Inc. v. Trump*,
   No. 18 Civ. 9443 (LGS), 2020 WL 5836419 (S.D.N.Y. Oct. 1, 2020) ...............................8

*U.S. ex rel. Chorches v. Am. Med. Response, Inc.*,
   865 F.3d 71 (2d Cir. 2017).................................................................................................2

*U.S. ex rel. Integra Med Analytics LLC v. Providence Health & Servs.*,
   No. CV 17-1694 PSG (SSx), 2019 WL 6973547 (C.D. Cal. Oct. 8, 2019)........................8

*Weber v. United States Tr.*,
   484 F.3d 154 (2d Cir. 2007)..............................................................................................10

*Whyte v. WeWork Cos.*,
   No. 20 Civ. 1800, 2020 WL 4383506 (S.D.N.Y. July 31, 2020) ........................................8

**Statutes & Regulation**

26 U.S.C. § 501(c)(3)...................................................................................................3

28 U.S.C. § 1292...............................................................................................2, 4, 8, 10

26 C.F.R. § 1.501(c)(3)-1(d)(2) ...................................................................................5

**Other Authorities**

16 Fed. Prac. & Proc. Juris. (3d ed. 2020) ....................................................................9

I.R.S. Priv. Ltr. Rul. 201323035 (June 7, 2013) .........................................................3

## INTRODUCTION

Before allowing this case to move into burdensome and expensive discovery, the Court should certify its recent Memorandum Opinion & Order, Doc. 48 ("Op."), for immediate interlocutory appeal.  This is an extraordinary case—a foreign agent seeks to use the New York False Claims Act to punish a U.S. civil society organization whose advocacy it disagrees with.  And TZAC's complaint relies on an equally unprecedented theory of attribution—that NIF is legally responsible, on pain of treble damages plus penalties to the tune of over $110 million, *see* Doc. 30 (Am. Compl.) ¶¶ 38–41, for alleged "electioneering" by its grantees, even absent any allegation that the grantees used NIF's grants to engage in the conduct at issue.

Especially in a case like this, the burdens and costs of civil discovery make the pleading stage a critical juncture.  Allowing TZAC to unlock the doors of discovery here would not only harm NIF but would chill protected advocacy by civil society organizations.  If allegations as thin as TZAC's are enough to force churches, philanthropic foundations, educational institutions, and other nonprofit organizations to incur the expenses of discovery—and the special risks posed by allowing ideological opponents to use discovery to advance their political agendas—that will have profound consequences for grant-making charities.  Indeed, those organizations will have no choice but to limit or eliminate contributions to other organizations that *permissibly* engage in electioneering, or even issue advocacy that could be misconstrued as electioneering, for fear of being hit with a costly lawsuit.

Notwithstanding the Court's thoughtful opinion, NIF respectfully submits that there is a substantial ground for difference of opinion about the sufficiency of TZAC's allegations:

- TZAC has not alleged—not even in a purely conclusory manner—that any of the grantees whose conduct TZAC challenges used NIF's grants to engage in that conduct.

- The Court's holding that TZAC has adequately alleged that NIF is responsible for its grantees' alleged conduct rests on an allegation that NIF gave "general grants," Am. Compl. ¶ 31; Op. 36–37, but TZAC never explains what it means by that term or how it—the antithesis of the prototypical "insider" relator—could claim to know the terms of NIF's agreements with its grantees.

As the Court recognized, Rule 8(a) required TZAC to state well-pleaded factual allegations, not mere legal conclusions, that are "sufficient 'to raise a right to relief above the speculative level.'" Op. 10 (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). And Rule 9(b) required TZAC to go beyond that baseline standard and (among other things) "explain why [NIF's allegedly false statements to New York] were fraudulent.'" Op. 11 (quoting *U.S. ex rel. Chorches v. Am. Med. Response, Inc.*, 865 F.3d 71, 81 (2d Cir. 2017)). There is substantial ground for difference of opinion regarding whether TZAC's allegations met these standards, and allowing the Second Circuit to resolve that issue now would clarify—if not end—this litigation and would serve the public interest.

## ARGUMENT

This Court may certify an interlocutory appeal of any order that (1) "involves a controlling question of law" (2) "as to which there is substantial ground for difference of opinion" where (3) an immediate appeal "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). "When a ruling satisfies these criteria and 'involves a new legal question or is of special consequence,' then the district court 'should not hesitate to certify an interlocutory appeal.'" *Balintulo v. Daimler AG*, 727 F.3d 174, 186 (2d Cir. 2013) (quoting *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 111 (2009)). The Court's recent opinion satisfies all three conditions and carries grave implications for NIF and other nonprofit organizations. The Court should thus exercise its substantial discretion and certify the order for Second Circuit review.

I.      **Whether TZAC has sufficiently pleaded attribution of NIF's grantees' alleged conduct to NIF for purposes of 26 U.S.C. § 501(c)(3) is a controlling question of law.**

TZAC's ability (or inability) to plead factual allegations showing that NIF is responsible for the alleged "electioneering" conduct by its grantees will control the course of this litigation.

As the Court recognized, it is insufficient for TZAC to allege that NIF's *grantees* engaged in conduct that would run afoul of 26 U.S.C. § 501(c)(3)'s prohibition on electioneering.  NIF is free to make grants to organizations that are not tax-exempt under U.S. law so long as NIF restricts those grants to permissible uses; grantees' conduct using non-NIF funds does not affect NIF's tax-exempt status.  *See* Op. 36 (citing, among other things, I.R.S. Priv. Ltr. Rul. 201323035 (June 7, 2013) ("[A]n organization will not jeopardize its exemption under [§] 501(c)(3) of the Code, even though it distributes funds to nonexempt organizations, provided it retains control and discretion over use of the funds for [§] 501(c)(3) purposes.")); *see also* Doc. 37 (NIF motion to dismiss) at 14–16.

For this reason, allegations that NIF *knew* about electioneering activities by its grantees are not sufficient: § 501(c)(3) neither prohibits non-exempt organizations from engaging in electioneering nor prohibits exempt organizations from giving grants to non-exempt organizations that use other funds to engage in electioneering.  Instead, as the Court explained, "[l]iability" on TZAC's theory that "NIF knew its grantees engaged in impermissible electioneering activities ... heavily relies on the premise that *those activities* can be attributed to NIF."  Op. 36 (emphasis added).  For NIF's certifications of compliance with § 501(c)(3) to have been knowingly false as required by the New York FCA, NIF would have had to have known (or recklessly disregarded) not only that its grantees' activities crossed the blurry line separating issue advocacy from electioneering but also that NIF itself should be deemed to have "indirect[ly]" engaged in those

activities.  *See* Op. 8 (quoting Am. Compl. ¶ 9, which alleges that NIF falsely "certified that it had

not 'engage[d] in direct or indirect political campaign activities on behalf of or in opposition to

candidates for public office'").

Whether TZAC adequately pleaded factual allegations to support "the premise" of

attribution is therefore critical.[1]  And although that is a pleading issue, it is a controlling question

of law: TZAC has already amended its complaint and, as a non-insider, lacks knowledge that

would enable it to plead additional factual allegations to justify the attribution its claim depends

on.  Because the operative complaint constitutes TZAC's best effort to plead facts that would

justify attributing the grantees' alleged conduct to NIF, a decision by the Second Circuit that

TZAC's allegations are insufficient to support "the premise that [NIF's grantees' alleged

electioneering] activities can be attributed to NIF," Op. 36, would end this lawsuit.  And a question

of law of course counts as "controlling" under 28 U.S.C. § 1292(b) "if reversal of the district

court's order would terminate the action."  *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione

Motonave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21, 24 (2d Cir. 1990).

## II.   There is substantial ground for difference of opinion about the Court's conclusion.

In denying NIF's motion to dismiss, this Court held that TZAC's allegations cleared federal

plausibility and particularity standards because (1) TZAC described some grants as "general";

(2) TZAC alleged that NIF was aware of grantees' "electioneering" conduct; and (3) TZAC

---

[1] TZAC attempted to allege that NIF *directly* engaged in electioneering in 2019, but the Court correctly concluded that that allegation fails to state a claim because the latest tax filing that TZAC contends was false covered tax year 2017.  Op. 35 (discussing Am. Compl. ¶ 24).  This temporal mismatch equally prevents TZAC from relying on allegations of electioneering *by NIF grantees* post-dating 2017.  *See* Am. Compl. ¶¶ 25, 29, 30 (alleging conduct by grantees in 2018 and 2019). Even if 2018 or 2019 electioneering by NIF's grantees could be attributed to NIF, that would not render NIF's certifications about § 501(c)(3) compliance in 2017 or earlier years false.

pointed to NIF's statements that it supported "pro-democracy and progressive forces" and opposed "Israel's regressive right."  *See* Op. 36–38 (internal quotation marks omitted).

As explained above, however, that NIF was allegedly aware of the grantees' conduct at issue is not sufficient to state a claim, because their conduct cannot be attributed to NIF unless the grantees used NIF's funds to engage in that conduct.  *See supra* at 3.  Nor do NIF's statements about supporting "pro-democracy and progressive forces" raise TZAC's claims to the required level of plausibility, because § 501(c)(3) organizations are free to support progressive causes and viewpoints and oppose regressive ones (or vice-versa) so long as they do not support or oppose *candidates* or *parties*.  *See* 26 C.F.R. § 1.501(c)(3)-1(d)(2).  Such generalized statements as the ones TZAC quotes—"redefine the security discourse," "articulating new and compelling ideas on the immediate and long-term security challenges," and "redefining the security paradigm in ways consistent with progressive values"—are protected issue advocacy.  Am. Compl. ¶ 33; *see* Doc. 37 at 19.  At the very least, these statements do not so clearly cross the line separating issue advocacy from prohibited electioneering that it is plausible to infer that NIF knew or should have known that such statements rendered its § 501(c)(3)-compliance certifications false.  The Court does not appear to have held otherwise; while the Court relied on the allegation that NIF made these statements, it did so in the context of addressing the allegation that "the [Center for Peace and Security] *received grants from NIF* and launched a campaign to vote Benjamin Netanyahu out of office."  Op. 37 (emphasis added) (citing Am. Compl. ¶¶ 33–34).

The sufficiency of TZAC's claim therefore comes down to its allegations of "general" grant-giving—*i.e.*, that NIF allowed grantees to use its funds to engage in electioneering activities. That is the only basis on which NIF could be said to have "engage[d]," through the grantees, in "indirect political campaign activities," Am. Compl. ¶ 9, and thus the only basis on which NIF's

tax-form certifications could be deemed false.  Yet TZAC pleaded almost no facts to support this

notion of "general grants":

- The complaint uses the term "general grant" only twice.  One reference alleges that NIF gave "general grants" to Adalah.  Am. Compl. ¶ 28.  The complaint contains precisely one sentence about Adalah's conduct: "In 2015 Adalah admitted to calling on the Central Election Commission to reject disqualification motions against MK Haneen Zoabi."  *Id.*

- The only other reference to "general grants" is conclusory and non-specific: "NIF gave and continues to give general grants on a constant basis to organizations that are involved in electioneering which it knows about."  Am. Compl. ¶ 31.

- TZAC never even says what it means by the term "general grants."  In particular, TZAC never alleges, even in conclusory terms, that NIF gave grants to any of the grantees at issue that by their terms permitted (or even failed to forbid) the grantee from using the grant funds to engage in electioneering.

- The complaint never identifies what basis TZAC—the antithesis of the classic "insider" relator—could have for describing NIF's grants as "general" or otherwise making factual allegations about the terms of NIF's agreements with its grantees.

The Court concluded that TZAC's allegation of "general grants" in paragraph 31 was

sufficient: "Accepting this statement as true and viewing it in the light most favorable to the non-

moving party, the Court views this allegation as meaning that NIF's grantees were given funds

that were not earmarked for a specific non-electioneering purpose, and that the grantees, not NIF,

were given discretion as to how to spend the funds.  At the pleading stage, this is sufficient to

establish that NIF was reckless in [not] preventing its funds from being spent on the political

activities described on its Form 990s ...."  Op. 36–37.

NIF respectfully submits that this conclusion is subject to substantial grounds for difference

of opinion.  TZAC did not actually say any of what the Court read into this unelaborated allegation,

let alone plead meaningful facts showing what the Court inferred.  And the notion that NIF's grants

gave the grantees "discretion" to use NIF's funds for electioneering is highly implausible, given

TZAC's allegation that NIF has "its own requirement listed on its web site that grantees shouldn't electioneer." Am. Compl. ¶ 31.[2]  Similarly, while the Court stated that "NIF is adequately pleaded to have known that *its funds* were being impermissibly spent on political activities," Op. 37 (emphasis added), TZAC did not allege *at all* that NIF's funds were impermissibly spent on political activities.  The question—on which NIF submits there is at least substantial ground for difference of opinion—is whether the Court should nonetheless assume that necessary fact. Finally, to the extent that the Court's decision rests on the lone allegation about Adalah, apart from the fact that the complaint does not contain meaningful factual allegations fleshing out what TZAC means by alleging that NIF gave Adalah "general grants," the sufficiency of that allegation is subject to substantial ground for difference of opinion.  Opposing the disqualification of a candidate is enforcing the ground rules of democracy; ensuring that citizens have the opportunity to vote for eligible candidates is not the same thing as telling them whom to vote for.  *See* Doc. 37 at 19–22 & n.5.

For all these reasons, the Court's conclusion that TZAC adequately pleaded facts supporting its theory that NIF's grantees' alleged "impermissible electioneering activities ... can be attributed to NIF," Op. 36, raises an important question on which there is "substantial ground

---

[2] The Court stated that "[a]t the very least, TZAC has adequately alleged that NIF was reckless in its supervision of its grantees and permitted them to ignore *NIF's own conditions for funding*." Op. 37 (emphasis added) (citing Am. Compl. ¶¶ 31–32).  To the extent that "NIF's own conditions for funding" tracked § 501(c)(3)'s conditions, however, that would contradict the notion that NIF gave grants that left the grantee free in its "discretion" to use the funds for electioneering activities. Op. 36.  Conversely, to the extent that NIF's funding conditions were different from § 501(c)(3)'s conditions, then any failure by NIF to enforce its funding conditions would be irrelevant: the Amended Complaint alleges only that NIF made false certifications to New York using language that "tracks the language of Internal Revenue Code Section 501(c)(3)," Am. Compl. ¶ 9, and says nothing about any certifications concerning NIF funding conditions.

for difference of opinion."  28 U.S.C. § 1292(b).  In this Circuit, that standard has often been met by questions of "first impression" that are "particularly difficult" to answer.  *Pen Am. Ctr., Inc. v. Trump*, No. 18 Civ. 9443 (LGS), 2020 WL 5836419, at *2 (S.D.N.Y. Oct. 1, 2020) (quoting *Whyte v. WeWork Cos.*, No. 20 Civ. 1800, 2020 WL 4383506, at *2 (S.D.N.Y. July 31, 2020); *see also Klinghoffer*, 921 F.2d at 25 (permitting interlocutory appeal to resolve a difficult question of first impression).

As the Court's opinion illustrates, its decision is the first of its kind.  For a private party to invoke the New York FCA to police compliance with federal tax-exemption standards is novel enough.  But TZAC's case requires the further leap of assessing the alleged knowing falsity of NIF's certifications to New York based, not on NIF's own conduct, but on alleged conduct by NIF's grantees.  Neither the parties nor the Court appears to have identified a case on point that answers the critical question of what TZAC would have to plead to satisfy Rule 8(a) and Rule 9(b) in this unusual context.  As explained in the next section, this case is as sensitive and important as it is unprecedented, making interlocutory appeal all the more warranted.

### III.    Immediate appeal would advance the ultimate termination of this litigation and promote the public interest.

This Court has held that § 1292(b)'s "material advancement" prong is met when a ruling from the Second Circuit would at the very least "simplify the scope of discovery."  *German v. Fed. Home Loan Mortg. Corp.*, No. 93 CIV. 6941 NRB, 2000 WL 1006521, at *2 (S.D.N.Y. July 19, 2000); *see also U.S. ex rel. Integra Med Analytics LLC v. Providence Health & Servs.*, No. CV 17-1694 PSG (SSx), 2019 WL 6973547, at *4 (C.D. Cal. Oct. 8, 2019) (allowing interlocutory appeal at the pleading stage in order to "avoid protracted and expensive (but ultimately unnecessary) litigation" and reduce "the burdens on the litigants and court system" (quoting

*Beeman v. Anthem Prescription Mgmt., Inc.*, No. EDCV 04-407-VAP (SGLx), 2007 WL 8433884, at *2 (C.D. Cal. Aug. 2, 2007)); 16 Fed. Prac. & Proc. Juris. § 3930 (3d ed. 2020) (noting the connection between the "material advancement" prong and the goal of "accelerating or at least simplifying trial court proceedings"). And in this case, the Second Circuit's opinion on TZAC's pleading obligations has the potential to moot "further motion practice, discovery, or trial." *Pearson Educ., Inc. v. Liu*, No. 1:08-CV-06152-RJH, 2010 WL 623470, at *2 (S.D.N.Y. Feb. 22, 2010).

As explained above, TZAC's claim that NIF's tax-form certifications violated the False Claims Act depends on inferring (1) that NIF grantees used NIF funds to engage in the alleged electioneering activities and (2) that NIF knew or recklessly disregarded that fact. TZAC's effort to base its claim on alleged direct electioneering by NIF failed, *see supra* at 4 n.1 (citing Op. 35), so all that remains is TZAC's theory that NIF's grantees' alleged conduct should be attributed to NIF. If the Second Circuit were to conclude that TZAC has not pleaded meaningful facts sufficient to support its attribution-based claim, this case would be over. At the very least, if the Second Circuit took a different view from this Court's opinion, that would significantly narrow this case and clarify any part of it that might remain. *Cf. Fed. Hous. Fin. Agency v. UBS Americas, Inc.*, 858 F. Supp. 2d 306, 338 (S.D.N.Y. 2012) ("[A] conclusion by the Court of Appeals that this Court erred in its May 4 ruling has the potential to end or at a minimum significantly restrict the scope of this litigation."). Conversely, if this Court is correct that TZAC's allegations are adequate to show that NIF's tax-form certifications were knowingly false, then interlocutory appeal will confirm that conclusion.

More broadly, interlocutory appeal will allow the Second Circuit to address the pleading threshold for attributing grantee conduct to grantor organizations. This is an important legal

question with ramifications far beyond this particular dispute—and, as a pleading question, it cannot be resolved at a later stage. *Cf. Weber v. United States Tr.*, 484 F.3d 154, 159 (2d Cir. 2007) ("Congress passed 28 U.S.C. § 1292(b) primarily to ensure that the courts of appeals would be able to 'rule on ... ephemeral question[s] of law that m[ight] disappear in the light of a complete and final record.'" (quoting *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 864 (2d Cir. 1996)). If allegations as minimal as TZAC's can unlock the doors to discovery, then the temptation for others to file similar qui tam actions will be irresistible. Civil discovery is often so expensive and burdensome that as a practical matter a relator wins if a qui tam action gets past the pleading stage. That reality is problematic enough in ordinary cases, but a case seeking over $110 million against a nonprofit organization based on its advocacy and charitable giving is no ordinary case. While the Court's opinion notes that NIF may potentially prevail on summary judgment, *see* Op. 20, 31, the Court's denial of NIF's motion to dismiss will invite more ideologically motivated groups and individuals to file qui tam actions as a way to harass and impose costs on those who hold views different from theirs.

Absent immediate appeal, the Court's decision will be particularly problematic for grant-making institutions, which now must confront the prospect of invasive discovery and draconian potential liability based on the conduct of their grantees; if a relator need not even allege that a grantee used a charity's funds to engage in specific conduct, grant-making charities face a real risk of liability by association. Many grant-making organizations will limit their litigation exposure by distancing themselves from any potential grantee that engages in electioneering, or issue advocacy that could conceivably be alleged to be electioneering, even though § 501(c)(3) does not prohibit non-exempt grantee organizations from electioneering with separate funds.

10

The weaponization of the FCA in the battle of ideas is highly concerning to civil society organizations of all stripes.  The Court should exercise caution and allow the Second Circuit to decide whether TZAC has pleaded enough facts to state a plausible claim.  Doing so would not only advance the ultimate termination of this case, but also would advance the public interest.

## CONCLUSION

For the foregoing reasons, the Court should certify its opinion and order denying NIF's motion to dismiss for interlocutory appeal.

Dated: March 2, 2021

Respectfully submitted.

/s/  *Jeffrey S. Bucholtz*

Jeffrey S. Bucholtz, *Pro Hac Vice*
Gabriel Krimm, *Pro Hac Vice*
KING & SPALDING LLP
1700 Pennsylvania Ave., NW
Washington, DC 20006
Tel: (202) 626-2907
Fax: (202) 626-3737
jbucholtz@kslaw.com
gkrimm@kslaw.com

J. Emmett Murphy
KING & SPALDING LLP
1185 Avenue of the Americas
New York, NY 10036
Tel: (212) 556-2100
Fax: (212) 556-2222
jemurphy@kslaw.com

Brian Hauss
Arianna Demas
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
Tel: (212) 549-2604
Fax: (212) 549-2649
bhauss@aclu.org
ademas@aclu.org

*Counsel for Defendant New Israel Fund*